**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEATHERFORD SWITZERLAND TRADING AND DEVELOPMENT GMBH, solely in its capacity as Administrative Agent of a certain indenture dated as of June 28, 2016, and WEATHERFORD LATIN AMERICA, S.C.A., <br><br> Plaintiffs, <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO, S.A., <br><br> Defendants. | Case No.: 1:23-cv-10703 <br><br><br> ORAL ARGUMENT REQUESTED |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     PLAINTIFFS HAVE NOT MET THEIR PRIMA FACIE BURDEN, AS
        THEY RELY ON INADMISSIBLE EVIDENCE ......................................... 3

        A.      Exhibits 3-6—Emails and Letters From "Weatherford"—and Any
                Information in the Kricorian Affidavit Based on Those Exhibits Are
                Inadmissible Hearsay .................................................................................... 3

        B.      The Kricorian Affidavit Appears to Rely on Other Out of Court
                Statements Not Attached As Exhibits, Which Are Also Inadmissible
                Hearsay ......................................................................................................... 7

        C.      Plaintiffs Cannot Authenticate Exhibits 1 & 2—The Note and The Note
                Agreement—Through the Kricorian Affidavit, and They Are Therefore
                Inadmissible ................................................................................................. 8

III.    ALTERNATIVELY, PLAINTIFFS' MOTION FOR SUMMARY
        JUDGMENT SHOULD BE DENIED TO ALLOW FOR DISCOVERY
        PURSUANT TO FRCP 56(D) ..................................................................... 9

        A.      The Political Situation in Venezuela, the United States' Sanctions Policy
                Regarding Venezuela, and the United States' Recognition of the
                Legitimate Opposition Government and, Consequently, Defendants ................. 11

        B.      As a Result of Maduro Regime's Illegal and Illegitimate Actions,
                Defendants Have No Access to their Books and Records or to Witnesses
                Relevant to the Purported Note Agreement and Note ..................................... 15

        C.      Defendants Anticipate Discovery Will Go To Questions of Material Fact
                Challenging Whether Plaintiffs Have Met Their Burden and Supporting
                Various Defenses .......................................................................................... 17

                1.      PDVSA's Defense of Impossibility of Payment ....................................... 17

                2.      Defendants' Defenses of Actual Payment and Failure of
                        Consideration .................................................................................. 20

                3.      Defendants Intend to Challenge that Plaintiffs Have Met Their
                        Burden and Can Prove Each Element ..................................................... 20

        D.      Defendants Have Already Propounded Discovery on Plaintiffs, and
                Anticipate Seeking Letters of Request to Third-Party Institutions
                Following the Court's Denial of Plaintiffs' Motion ......................................... 22

IV.     CONCLUSION ............................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*AL Infinity, LLC v. Crown Cell, Inc.*,
  20 Civ. 4813, 2023 WL 5097979 (S.D.N.Y. Aug. 9, 2023) ......................................................6

*Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*,
  513 F. Supp. 2d 18 (S.D.N.Y. 2007)..........................................................................................9

*Axginc Corp. v. Plaza Automall, Ltd.*,
  759 F. App'x 26 (2d Cir. 2018) ................................................................................................18

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
  769 F.2d 919 (2d Cir. 1985)......................................................................................................15

*Carter v. AT & T Commc'ns*,
  759 F. Supp. 155 (S.D.N.Y. 1991) ...........................................................................................11

*Casmento v. Volmar Constr., Inc.*,
  No. 20-CV-0944 (LJL), 2021 WL 1062343 (S.D.N.Y. Mar. 19, 2021)
  (Liman, J.)..............................................................................................................................9, 10

*Chem. Bank v. Stahl*,
  712 N.Y.S.2d 452 (1st Dep't 2000) ..........................................................................................22

*Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*,
  271 F.3d 374 (2d Cir. 2001).....................................................................................................10

*Faunus Grp. Int'l, Inc. v. Ramsoondar*,
  No. 13CV6927 HB, 2014 WL 2038884 (S.D.N.Y. May 16, 2014) ........................................20

*Gazis v. John S. Latsis (USA) Inc.*,
  729 F. Supp. 979 (S.D.N.Y. 1990) ...........................................................................................15

*Jiménez v. Palacios*,
  250 A.3d 814 (Del. Ch. 2019), *aff'd,* 237 A.3d 68 (Del. 2020)..............................................14

*Liddy v. Cisneros*,
  823 F. Supp. 164 (S.D.N.Y. 1993) ...........................................................................................22

*In re Lyondell Chem. Co.*,
  No. 09-10023 (GCM), 2016 WL 6108526 (Bankr. S.D.N.Y. Oct. 19, 2016) ......................5, 6

*Mack v. Hall*,
  No. 918CV0875GLSCFH, 2020 WL 5793438 (July 27, 2020), *report and
  recommendation adopted*, No. 918CV875GLSCFH, 2020 WL 5775205
  (N.D.N.Y. Sept. 28, 2020) ..........................................................................................................9

*Miller v. Wolpoff & Abramson, L.L.P.*,
  321 F.3d 292 (2d Cir.2003)......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

*Morisseau v. DLA Piper*,
  532 F. Supp. 2d 595 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009)........................6

*Principal Life Ins. Co. v. Erno Altman Ins. Tr.*,
  No. 10-CV-1936 DLI, 2011 WL 7498936 (Sept. 20, 2011), *report and
  recommendation adopted*, No. 10-CV-1936 DLI RLM, 2012 WL 869303
  (E.D.N.Y. Mar. 13, 2012) .............................................................................................................8

*Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*,
  82 F.4th 161 (2d Cir. 2023) ................................................................................................18, 20

*Rekor Sys., Inc. v. Loughlin*,
  No. 19-CV-7767 (LJL), 2022 WL 789157 (S.D.N.Y. Mar. 14, 2022)
  (Liman, J.)..................................................................................................................................20

*Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*,
  82 F.4th 144 (2d Cir. 2023) ................................................................................................18, 20

*Trend Exp. Funding Corp. v. Foreign Credit Ins. Ass'n*,
  670 F. Supp. 480 (S.D.N.Y. 1987) ...........................................................................................11

*UBS AG, London Branch v. Greka Integrated, Inc.*,
  No. 21-1385-CV, 2022 WL 2297904 (2d Cir. June 27, 2022) .............................................9, 11

*Walden v. Sanitation Salvage Corp.*,
  No. 14 CIV. 112 ER, 2015 WL 1433353 (S.D.N.Y. Mar. 30, 2015) .......................................10

**Statutes & Rules**

22 U.S.C. § 9702.................................................................................................................................14

CPLR § 3213.............................................................................................................................1, 9, 19

Fed. R. Civ. P.

   Rule 56.........................................................................................................................................2, 9

   Rule 56(c)(4) ..............................................................................................................................3, 8

   Rule 56(d) ............................................................................................................................ *passim*

Fed. R. Evid.

   Rule 802...........................................................................................................................................4

   Rule 803(6) ......................................................................................................................................5

# TABLE OF AUTHORITIES

**Page(s)**

Rule 803(6)(A-C)................................................................................................6

Rule 803(6)(D)..............................................................................................5, 6

Rule 901(b)(1)................................................................................................8

## Other Authorities

Articles of Association for Weatherford Switzerland Trading and Development
GmbH (May 18, 2016)........................................................................................7

*Dresser Rand Co. v. Petróleos de Venezuela, S.A.*,
19-cv-2689 (S.D.N.Y.), Dkts. 32, 59, 150..............................................19

Exec. Order No. 13692, 80 Fed. Reg. 12747 (2015) ......................................12

Exec. Order No. 13808, 82 Fed. Reg. 41155 (2017) ......................................13

*Lovati v. Petróleos de Venezuela, S.A.*,
19-cv-4799 (S.D.N.Y.)..............................................................................19

Press Statement, *Statement from President Donald Trump Recognizing
Venezuelan National Assembly President Juan Guaidó as the Interim
President of Venezuela*, U.S. Nat'l Archives (Jan. 23, 2019).................13

Press Statement, *Treasury Sanctions 13 Current and Former Senior Officials of
the Government of Venezuela*, U.S. Dep't of the Treasury (July 26, 2017) ..........................13

Press Statement, *Venezuela's Interim Government and the 2015 National
Assembly*, U.S. Dep't of State (Jan. 3, 2023)..........................................14

*Red Tree Invs. LLC v. Petróleos de Venezuela, S.A.*,
19-cv-2519 (S.D.N.Y.), Dkts. 99, 137.....................................................19

*Venezuela 2017 Human Rights Report*, U.S. Dep't of State (Apr. 20, 2018)................12

*Venezuela 2022 Human Rights Report*, U.S. Dep't of State (Mar. 20, 2023) ...............12

*Venezuela-Related Sanctions*, Office of Foreign Assets Control, U.S. Dep't of the
Treasury (last visited Jan. 29, 2024).........................................................13

Defendants Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("Petróleo," and together with PDVSA, "Defendants")[1] respectfully submit this memorandum of law in opposition to Plaintiffs Weatherford Latin America, S.C.A. ("Weatherford Latin America") and Weatherford Switzerland Trading and Development GmbH's ("Weatherford GmbH," and together with Weatherford Latin America, "Plaintiffs") motion for summary judgment (the "Motion" or "Mot.") and pursuant to Fed. R. Civ. P. ("FRCP") 56(d).

## I.   <u>INTRODUCTION</u>

Plaintiffs ask this Court for a $90 million judgment against Defendants based on a single affidavit from an affiant who lacks any personal knowledge of the matters at issue and relies exclusively on inadmissible evidence to form the basis of his statements—all prior to the parties conducting *any* discovery.  To make matters worse, as is widely known, Defendants are wrapped up in a political war in Venezuela between the illegitimate and dictatorial Maduro regime and the pro-democracy Opposition Government.  As such, Defendants lack access to all of their documents and employees within Venezuela, including documents purportedly relevant to this case.  Without any documents, and without any discovery, Plaintiffs in essence ask this Court to award them a default judgment against Defendants.  Plaintiffs' Motion should be denied and discovery allowed to commence.

Plaintiffs commenced this action by filing a motion for summary judgment in lieu of complaint under CPLR § 3213 in New York State Supreme Court on November 1, 2023. Following Defendants' timely removal to this Court, Plaintiffs' Motion was converted to a

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Declaration of Horacio Medina, dated January 28, 2024, filed contemporaneously herewith (the "Medina Decl." or "Medina Declaration").

standard FRCP 56 summary judgment motion, and must comply with both the FRCP and the Federal Rules of Evidence ("FRE").  Plaintiffs' Motion, however, does not.

Plaintiffs' Motion should be denied on the merits because Plaintiffs do not submit any admissible evidence in support of their claims.  They rely upon a single Affidavit of Max Kricorian, dated October 25, 2023 (the "Kricorian Aff."), but Mr. Kricorian lacks any personal knowledge of the facts.  Rather, Mr. Kricorian is a conduit for hearsay, reviewing documents and conveying their contents to this Court.  Moreover, who Mr. Kricorian works for, and whose records he reviewed, is not even clear.  Despite this, Plaintiffs use Mr. Kricorian to submit emails and testimonial evidence that are all hearsay, and, beyond a general assertion that they are based on "custodial records," Plaintiffs make no attempt to qualify this hearsay under any FRE exception.  Finally, the Kricorian Affidavit attaches the Note and Note Agreement, but Mr. Kricorian cannot authenticate these documents.  He has no knowledge of them, does not say what company purportedly possessed them, and cannot attest to their authenticity.  As none of the evidence Plaintiffs submit is admissible, their Motion must be denied.

Even if the Court were to consider this inadmissible evidence, Plaintiffs' Motion should still be denied pursuant to FRCP 56(d) as no discovery has occurred in this case.  The political situation in Venezuela means that Defendants lack access to all of their documents and employees in Venezuela, including all documents from the time period this purported Note and Note Agreement were entered into and when Defendants allegedly defaulted under both documents.  Only Plaintiffs and third-party financial institutions possess the information necessary for Defendants to proffer their defenses, but rather than follow the standard course and commence discovery, Plaintiffs have sought to obtain a judgment when Defendants cannot fully defend themselves without access to documents that will inform their defenses.  As explained

below and in the supporting Medina Declaration, Defendants anticipate raising several defenses, including that performance by PDVSA was impossible, that there was a failure of consideration for the Note Agreement, including the Guarantee contained within, and that Weatherford Latin America prevented Defendants' performance because banks would refuse to process transfers for the benefit of a Venezuela-registered company whose business was in the oil and natural gas industry.

As detailed below, either on the merits or pursuant to FRCP 56(d), Plaintiffs' Motion should be denied and discovery allowed to proceed.

II.     **PLAINTIFFS HAVE NOT MET THEIR PRIMA FACIE BURDEN, AS THEY RELY ON INADMISSIBLE EVIDENCE**

While Plaintiffs assert "Weatherford has established a *prima facie* case of its right to payment," their Motion relies exclusively on one affidavit from Mr. Kricorian that is merely a conduit for hearsay, and inadmissible exhibits.  FRCP 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). The affidavit is not based on Mr. Kricorian's personal knowledge, *see* Kricorian Aff. ¶ 1, but purely based upon his "review of the custodial records relating to the Note Agreement and Note." *Id.*  Thus, Mr. Kricorian's affidavit is simply a rehash of information he gleaned from out of court sources, namely (1) emails and letters contained in Exhibits 3-6, (2) other "records" he reviewed that were not attached as exhibits, and (3) the purported Note and Note Agreement.  All of these are inadmissible.

A.     Exhibits 3-6—Emails and Letters From "Weatherford"—and Any Information in the Kricorian Affidavit Based on Those Exhibits Are Inadmissible Hearsay

First, the Kricorian Affidavit attaches and describes various out of court emails and letters:

3

- Exhibit 3 is a purported email attaching a Notice of Default.  The Notice of Default is signed by Joshua McMorrow, who is identified as the Managing Officer of Weatherford GmbH.  The email, however is from Josh Silverman, whose only company affiliation is listed as "Weatherford."  Mr. Kricorian does not appear to be on this email.  This email does not contain any statements by Defendants.  Kricorian Aff. Ex. 3.

- Exhibit 4 is a purported email attaching a Notice of Acceleration.  The Notice of Acceleration is signed by Joshua McMorrow, who is identified as the Managing Officer of Weatherford GmbH.  The email, however is from Josh Silverman, whose only company affiliation is listed as "Weatherford."  Mr. Kricorian does not appear to be on this email.  This email does not contain any statements by Defendants.  Kricorian Aff. Ex. 4.

- Exhibit 5 is a purported email thread, containing emails exclusively sent by Josh Silverman, whose only company affiliation is listed as "Weatherford."  Mr. Kricorian does not appear to be on these emails.  These emails do not contain any statements by Defendants.  Kricorian Aff. Ex. 5.

- Exhibit 6 is a purported letter sent by Mathias Neuenschwander, who is identified as the Managing Officer of Weatherford GmbH.  There is no indication Mr. Kricorian received this letter.  This letter does not contain any statements by Defendants.  Kricorian Aff. Ex. 6.

Each of these exhibits are out of court statements offered to prove the truth of the matter asserted, and therefore are hearsay.  *See* FRE 802.  While the Kricorian Affidavit's reference to "custodial records" (Kricorian Aff. ¶ 1) implies Plaintiffs seek to admit these exhibits and Mr.

Kricorian's testimony gleaned from them under the business records exception to hearsay, Plaintiffs' efforts fall far short.  In order to admit documents under the business records exception, a party must submit evidence satisfying each element of the exception.  *See* FRE 803(6); *In re Lyondell Chem. Co.*, No. 09-10023 (GCM), 2016 WL 6108526, at *2 (Bankr. S.D.N.Y. Oct. 19, 2016) ("The party offering the document into evidence must provide a custodial witness to prove '*all*' of the conditions required by Rule 803(6)) (emphasis added).  Plaintiffs have satisfied none.

First, there is no basis to believe Mr. Kricorian is a custodian or other qualified witness capable of testifying to how the "custodial records" he reviewed were made or kept.[2]  *See* FRE 803(6)(D).  Mr. Kricorian identifies himself as "VP Treasurer of the Weatherford companies," but it is entirely unclear from the affidavit who Mr. Kricorian actually works for (beyond some amorphous group of "companies" generally) or how his job entitles him to know how these records are made and kept—particularly as he apparently has no personal knowledge of this matter.  *See* Kricorian Aff. ¶ 1.  Moreover, while Mr. Kricorian states he "review[ed] [] the custodial records relating to the Note Agreement and Note," he does not assert whose custodial records they are.  *See id.*  For example, Mr. Kricorian's affidavit does not identify whether the records belong to Weatherford Latin America, Weatherford GmbH, or some other Weatherford entity within the "Weatherford companies" Mr. Kricorian allegedly works for.  *See generally id.* The exhibits themselves do not answer these questions either.  Mr. Kricorian appears to have received none of these emails or letters, and while the letters themselves are purportedly from Weatherford GmbH, the emails (including those attaching the Notice of Default and Notice of Acceleration) come from Josh Silverman.  *See* Kricorian Aff. Exs. 3-6.  There is no indication

---

[2] There are also no certifications attached to any of the exhibits.

Mr. Silverman works for either of the Plaintiffs.  His signature and email domain are only generally listed as "Weatherford."  *Id.* Ex. 3-5.  In short, not only is there no basis to believe Mr. Kricorian is a custodian of these emails and letters or is otherwise qualified to testify regarding how these emails and letters are made and kept, but it is not clear what company actually produced these emails and letters and what company kept these emails and letters in their records.

Second, even if Mr. Kricorian could satisfy FRE 803(6)(D) and it was clear which company purportedly made and kept these communications, the Kricorian Affidavit lays no foundation to establish that the remaining elements of the business records exception applies, namely that these emails and letters were made at or near the time by someone with knowledge, were kept in the course of a regularly conducted activity of a business, and were made as a regular practice of that activity.  FRE 803(6)(A-C); *see generally* Kricorian Aff.  In fact, emails and letters rarely qualify as business records.  *See AL Infinity, LLC v. Crown Cell, Inc.*, 20 Civ. 4813, 2023 WL 5097979, at *8 n.9 (S.D.N.Y. Aug. 9, 2023) ("While an email could conceivably qualify as a business record if, for example, it confirms a sale, when the emails, as is the case here, contain unique and sporadic communications, not created as a record of any regularly conducted business activity, they are not admissible.") (internal quotations and citations omitted); *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009) ("An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule"); *In re Lyondell Chem.*

*Co.*, 2016 WL 6108526, at *2.[3]  As these exhibits are the only evidence Plaintiffs submit to claim Defendants missed any payments, the Motion must be denied for failing to make a *prima facie* case.

      B.    <u>The Kricorian Affidavit Appears to Rely on Other Out of Court Statements Not Attached As Exhibits, Which Are Also Inadmissible Hearsay</u>

The Kricorian Affidavit incudes factual assertions not supported by the exhibits, and thus must be based on other out of court "records" Mr. Kricorian reviewed.  For example the Kricorian Affidavit states that PDVSA made "payments that were due in September and December 2017, although both those payments were late."  Kricorian Aff. ¶ 8.  However, none of the exhibits attached to the affidavit mention anything about any payments being late. Similarly, the Kricorian Affidavit states that PDVSA has not made any payments since December 2017, and that "[s]ince December 2017, Petróleo has not paid any of the amounts due under the Note."  *Id.* ¶ 8-9, 12.  However, the last communication in the exhibits is from December 7, 2018, and no communication mentions Petróleo.  *See* Kricorian Aff. Exs. 3-6. Given Mr. Kricorian's lack of any personal knowledge of this case, information about purportedly late payments, what, if any payments, PDVSA made after December 7, 2018, and what, if any, payments Petróleo made after December 2017 must originate from other,

---

[3] Putting aside that it is Plaintiffs' burden to establish each element of the business records exception, these sporadic emails and transmission of a single Notice of Default and Notice of Acceleration as agent under a loan document are not the type of "regularly conducted business activit[ies]" of Plaintiffs—entities involved in providing equipment and services for oil and natural gas wells.  *See* Articles of Association for Weatherford Switzerland Trading and Development GmbH, Art. 2 (May 18, 2016) (describing the purpose of Weatherford GmbH as obtaining, trading, and selling intellectual property and oil rigs and equipment for the Weatherford group of companies, but making no mention of routinely acting as an administrative agent for loan documents) (available at: https://www.sec.gov/Archives/edgar/data/32908/00011 0465919038263/a19-11484_2ex99dt3a62.htm).

unidentified, out of court statements.  As explained *supra* at 5-7, any such documents or statements Mr. Kricorian relied upon to create his affidavit are hearsay, and no exception applies.

      C.     <u>Plaintiffs Cannot Authenticate Exhibits 1 & 2—The Note and The Note Agreement—Through the Kricorian Affidavit, and They Are Therefore Inadmissible</u>

The foundation for Plaintiffs' Motion is the Note and the Note Agreement, documents tendered to this Court by Mr. Kricorian, who has no personal knowledge of this case.  To authenticate the Note and the Note Agreement, Mr. Kricorian must have knowledge to be able to testify that they are what they claim to be, unless the matter is undisputed.  FRE 901(b)(1); FRCP 56(c)(4); *Principal Life Ins. Co. v. Erno Altman Ins. Tr.*, No. 10-CV-1936 DLI, 2011 WL 7498936, at *3 (Sept. 20, 2011), *report and recommendation adopted*, No. 10-CV-1936 DLI RLM, 2012 WL 869303 (E.D.N.Y. Mar. 13, 2012) ("affidavits not based on personal knowledge may not be used to support (or defeat) summary disposition of a claim, 'except as to matters that [are] undisputed ....') (quoting *Rosenberg v. Silver*, 762 F.2d 255, 256 (2d Cir.1985)).  While Mr. Kricorian attests both the Note and the Note Agreement are "true and correct cop[ies]," he provides no basis for such an assertion.  Kricorian Aff. ¶ 4.  Lacking any personal knowledge, and having merely reviewed custodial records of some unknown company (*see supra* at 5-6), Plaintiffs have not established through the Kricorian Affidavit that either document is what Plaintiffs claim or that they were in fact signed by Defendants, and the authenticity of the Note and the Note Agreement is disputed.  *See generally, id.*; *see also* Medina Decl. ¶¶ 23-29 (Defendants have no knowledge or record of the Note or the Note Agreement).  As Plaintiffs

have failed to establish the admissibility of any of the exhibits to or the documents referenced in the Kricorian Affidavit, Plaintiffs' Motion must be denied.[4]

## III.   ALTERNATIVELY, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED TO ALLOW FOR DISCOVERY PURSUANT TO FRCP 56(D)

Plaintiffs commenced this action in New York State Supreme Court by filing a motion for summary judgment in lieu of complaint, pursuant to CPLR § 3213, on November 1, 2023. On December 7, 2023, Defendants timely removed the action to this Court, thereby converting Plaintiffs' Motion into a standard FRCP 56 motion for summary judgment. *UBS AG, London Branch v. Greka Integrated, Inc.*, No. 21-1385-CV, 2022 WL 2297904, at *2 (2d Cir. June 27, 2022) (holding need for discovery of removed CPLR § 3213 motion is governed by FRCP 56(d) and relevant case law).  Plaintiffs' Motion, however, is premature as no discovery has occurred and Defendants currently have no access to any relevant documents or witnesses in this case— including Defendants' own.

While the FRCP does not prohibit summary judgment motions prior to the close of discovery, "[s]ummary judgment is ordinarily disfavored prior to discovery having been conducted."  *Casmento v. Volmar Constr., Inc.*, No. 20-CV-0944 (LJL), 2021 WL 1062343, at *3 (S.D.N.Y. Mar. 19, 2021) (Liman, J.) (denying summary judgment as "premature," where

---

[4] As Plaintiffs have failed to meet their *prima facie* burden, Plaintiffs cannot salvage their motion by submitting new affidavits or exhibits on reply.  *See Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 513 F. Supp. 2d 18, 20 (S.D.N.Y. 2007) ("Defendants argument in opposition was simply that plaintiff had not met its burden in moving summary judgment. To allow plaintiff to then submit new materials to meet its burden would inappropriately allow plaintiff a second bite at the summary judgment apple."); *see also Mack v. Hall*, No. 918CV0875GLSCFH, 2020 WL 5793438, at *6 (July 27, 2020), *report and recommendation adopted*, No. 918CV875GLSCFH, 2020 WL 5775205 (N.D.N.Y. Sept. 28, 2020) ("Because the affidavit is new evidence, and Mack was not provided with an opportunity to respond to the evidence in a sur-reply, the Court will not consider the affidavit.").

there was a dispute of facts and "document discovery was at its earliest stages and no depositions had been taken").  "There is a critical distinction between cases where a litigant opposing a motion for summary judgment requests a stay of that motion to conduct *additional* discovery and cases where that same litigant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to *commence* discovery with respect to the non-movant's claims." *Walden v. Sanitation Salvage Corp.*, No. 14 CIV. 112 ER, 2015 WL 1433353, at *3 (S.D.N.Y. Mar. 30, 2015) (cleaned up, emphasis in original).  Summary judgment should only be granted if "*after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof."  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303–04 (2d Cir.2003) (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000)) (cleaned up, emphasis in original); *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) ("Fed.R.Civ.P. 56[(d)] provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion.").  "'Only in the rarest of cases may summary judgment be granted against a [non-movant] who has not been afforded the opportunity to conduct discovery.'"  *Casmento*, 2021 WL 1062343, at *3 (Liman, J.) (quoting *Hellstrom*, 201 F.3d at 97; citing *Great Wall de Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 492-93 (S.D.N.Y. 2015)); *see also Walden*, 2015 WL 1433353, at *5 ("Courts in the Second Circuit routinely deny or defer motions for summary judgment when the non-movant has not had an opportunity to conduct discovery and submits an affidavit or declaration that meets the requirements set forth in Rule 56(d).").

A Court may deny, or defer, a motion for summary judgment when, pursuant to FRCP 56(d), the non-movant shows by affidavit or declaration it cannot present facts essential to justify its opposition.  FRCP 56(d).  The affidavit or declaration must state "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful."  *UBS AG, London Branch*, 2022 WL 2297904, at *3.

"[A]llowing a continuance for discovery, is applied with 'a spirit of liberality' as a safeguard against an improvident or premature grant of summary judgment."  *Carter v. AT & T Commc'ns*, 759 F. Supp. 155, 160 (S.D.N.Y. 1991); *Trend Exp. Funding Corp. v. Foreign Credit Ins. Ass'n*, 670 F. Supp. 480, 486 (S.D.N.Y. 1987) (permitting discovery even where "on the present record it seems unlikely that [non-movant's] search will prove fruitful.").

As explained below and in the accompanying Medina Declaration, Plaintiffs' Motion should be denied to allow for discovery to commence regarding both the veracity of Plaintiffs' claims and to establish Defendants' anticipated defenses.

A. <u>The Political Situation in Venezuela, the United States' Sanctions Policy Regarding Venezuela, and the United States' Recognition of the Legitimate Opposition Government and, Consequently, Defendants</u>

In 2013, following the death of Hugo Chávez, Nicolás Maduro took power as president of Venezuela.  Medina Decl. ¶ 4.  Since then, Venezuela's political, humanitarian, and economic situation has only deteriorated.  *Id*.  The State Department accuses the authoritarian dictator of election manipulation, suppression of dissent, and violent and systematic repression of human rights and fundamental freedoms, including the use of torture, arbitrary detentions, and

extrajudicial killings.  *Id.* ¶¶ 5-6; *Venezuela 2022 Human Rights Report*, U.S. Dep't of State at

1-9, 17-18, 33-37 (Mar. 20, 2023).[5]

Two years after Maduro took power, on March 8, 2015, President Obama issued

Executive Order 13692 ("EO 13692"), which declared a national emergency in response to "the

Government of Venezuela's erosion of human rights guarantees, persecution of political

opponents, curtailment of press freedoms, use of violence and human rights violations and

abuses in response to antigovernment protests, and arbitrary arrest and detention of

antigovernment protestors, as well as the exacerbating presence of significant public corruption."

Medina Decl. ¶ 7; Exec. Order No. 13692, 80 Fed. Reg. 12747 (2015).  In March 2017, the

Maduro-controlled Supreme Tribunal took actions to weaken the National Assembly—the only

branch of government controlled by the Venezuelan opposition—and assigned all of the National

Assembly's legislative functions to the Maduro-controlled judiciary.  *Id.* ¶ 8; *see also Venezuela

2017 Human Rights Report*, U.S. Dep't of State, at 1, 26 (Apr. 20, 2018) ("The executive branch,

however, used its control over the Supreme Court (TSJ) to weaken the National Assembly's

constitutional role to legislate, ignore the separation of powers, and enable the president to

govern through a series of emergency decrees.").[6]

In response, the Trump Administration initiated a sanctions regime to put pressure on the

Maduro government.  For example, on July 26, 2017, the Office of Foreign Assets Control,

pursuant to EO 13692, sanctioned thirteen then-current and former senior Venezuelan officials,

---

[5] Available at: https://www.state.gov/wp-content/uploads/2023/02/415610_VENEZUELA-2022-HUMAN-RIGHTS-REPORT.pdf.

[6] Available at: https://www.state.gov/wp-content/uploads/2019/01/Venezuela.pdf.

including the then-current and former Vice Presidents of Finance for PDVSA (Medina Decl. ¶ 9; Press Statement, *Treasury Sanctions 13 Current and Former Senior Officials of the Government of Venezuela*, U.S. Dep't of the Treasury (July 26, 2017)[7]), and, on August 24, 2017, President Trump issued Executive Order 13808 ("EO 13808"), which prohibits transactions related to bonds and new debt issued by the Government of Venezuela—including PDVSA and Petróleo. Medina Decl. ¶ 10; Exec. Order No. 13808, 82 Fed. Reg. 41155 (2017).  The United States' sanctions against Maduro and Venezuela continued to grow, and remain in place today.  *See* Medina Decl. ¶¶ 11-12; *Venezuela-Related Sanctions*, Office of Foreign Assets Control, U.S. Dep't of the Treasury (last visited Jan. 17, 2024).[8]

The efforts by the United States and the Venezuelan opposition government to put pressure on the authoritarian Maduro to step down reached a crescendo on January 23, 2019, when the National Assembly (Venezuela's opposition-led legislative branch) invoked the Venezuelan Constitution to declare Maduro's presidency illegitimate, and named National Assembly President Juan Guaidó as the Interim President of Venezuela.  Medina Decl. ¶ 13.  The same day, President Trump declared the Maduro regime "illegitimate," and officially recognized "Guaidó[] as the Interim President of Venezuela" and the National Assembly as the "only legitimate branch of government duly elected by the Venezuelan people."  *Id.* ¶ 14; Press Statement, *Statement from President Donald Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela*, U.S. Nat'l Archives (Jan. 29,

---

[7] Available at: https://home.treasury.gov/news/press-releases/sm0132.

[8] Available at: https://ofac.treasury.gov/sanctions-programs-and-country-information/venezuela-related-sanctions.

2019).[9]  Following his appointment as president, Guaidó named the PDVSA Ad-Hoc Board, which is responsible for the management of Defendants.  Medina Decl. ¶¶ 15-16.  The Defendants, as represented by the PDVSA Ad-Hoc Board, are the only legitimate versions of Defendants, as recognized by the United States Government and courts.  *See id.* ¶¶ 17-20; *see also* Press Statement, *Venezuela's Interim Government and the 2015 National Assembly*, U.S. Dep't of State (Jan. 3, 2023)[10]; 22 U.S.C. § 9702; *Jiménez v. Palacios*, 250 A.3d 814, 819-26 (Del. Ch. 2019), *aff'd,* 237 A.3d 68 (Del. 2020) (holding the United States' recognition of the National Assembly as the only legitimate government of Venezuela renders the PDVSA Ad-Hoc Board the only valid governing body of PDVSA for purposes of litigating in U.S. courts).

Despite the National Assembly's invocation of the Venezuelan Constitution to declare Maduro's presidency illegitimate and foreign governments' recognition of the Opposition Government as the only legitimate government of Venezuela, Maduro continues to cling onto power in Venezuela.  Medina Decl. ¶ 18.  Maduro has maintained his iron-grip over government operations within Venezuela, including the wholly-government owned PDVSA and its subsidiary Petróleo.  *Id.*  As such, Maduro has appointed his own illegitimate boards of directors ("Maduro's PDVSA & Petróleo"), which are neither recognized by the Opposition Government nor the United States.  *Id.*

---

[9] Available at: https://trumpwhitehouse.archives.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/.

[10] Available at: https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/.

B.    As a Result of Maduro Regime's Illegal and Illegitimate Actions, Defendants
       Have No Access to their Books and Records or to Witnesses Relevant to the
       Purported Note Agreement and Note

Discovery in this action is necessary, because Defendants do not possess any documents

or have access to any witnesses related to Plaintiffs' claims.  Courts should permit discovery

where "one party has superior access to factual information, and the other has not had the

opportunity to take discovery."  *Gazis v. John S. Latsis (USA) Inc.*, 729 F. Supp. 979, 983

(S.D.N.Y. 1990); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919,

925 (2d Cir. 1985) (regarding FRCP 56(d), "a denial of access to relevant information weighs in

favor of the party opposing a motion for summary judgment." (citing *Landmark Land Co. v.

Sprague*, 701 F.2d 1065, 1070 (2d Cir. 1983))).  As Defendants possess no information

concerning this dispute and Plaintiffs and third-party financial institutions do possess relevant

information, discovery is warranted here.

Despite the legitimacy of the Opposition Government, and thereby the PDVSA Ad-Hoc

Board and Defendants, Maduro and Maduro's PDVSA & Petróleo continue to exercise de facto

control over the Defendants' assets, books and records, and personnel within Venezuelan

territory.  Medina Decl. ¶ 21.  Defendants have no way of obtaining their own books and records

located in Venezuela, or to obtain the cooperation of PDVSA's personnel in Venezuela.  *Id.*

¶¶ 22, 35.  Moreover, Maduro's PDVSA & Petróleo continue to conduct business and enter into

contractual relationships without the consent of Defendants or the PDVSA Ad-Hoc Board,

resulting in various communications and contracts purportedly made in Defendants' name to

which Defendants have no knowledge of or access to.  *Id.* ¶¶ 21-22.

Defendants' lack of access to any documents or information located in Venezuela,

including all documents and records prior to January 23, 2019, is also true for all relevant

materials regarding Plaintiffs' claims.  Until Defendants were informed of this lawsuit,

Defendants were unaware of the existence of both the Note and the Note Agreement, including Petróleo's purported guarantee contained within. *Id.* ¶ 24. Neither the Note nor the Note Agreement are in the books and records of Defendants to which Defendants have access. *Id.* No documents or communications concerning the negotiations, execution, or performance of the Note or the Note Agreement are in Defendants' possession. *Id.* And no witnesses or other persons with knowledge of the Note and Note Agreement are available to Defendants. *Id.*

Defendants' lack of information goes far beyond just the Note and the Note Agreement in this case. Defendants are unaware of the existence of the Novation Agreement that purportedly formed the basis of Plaintiffs' consideration for the Note and the Note Agreement, and no such Novation Agreement is in the books and records of Defendants to which Defendants have access. *Id.* ¶ 26. No documents or communications concerning the negotiations, execution, or performance of the Novation Agreement are in Defendants' possession. *Id.* No witnesses or other persons with knowledge of the Novation Agreement are available to Defendants. *Id.* Moreover, Plaintiffs assert PDVSA made some timely payments under the Note and the Note Agreement, made some late payments under the Note and the Note Agreement, and that both Defendants then failed to make payments on or after March 28, 2018 under the Note and Note Agreement, but Defendants have no documented information concerning any of these completed, late, or missed payments. Kricorian Aff. ¶¶ 8-9, 12. Defendants possess no documents or communications concerning any of these payments or attempted payments, nor any information regarding why some payments were late or why payments ceased. Medina Decl. ¶¶ 27-29. While Plaintiffs assert they "made various unsuccessful attempts to collect the outstanding balance from Defendants," including issuing various notices, requests, and letters (Kricorian Aff. ¶¶ 13, 15, 17, 18), Defendants are unaware of any such attempts and possess no such documents

or communications.  Medina Decl. ¶ 29.  In short, Defendants possess no factual information regarding this matter, and the only way Defendants can defend, let alone even evaluate the legitimacy of Plaintiffs' claims, is by obtaining discovery from Plaintiffs and third-party financial institutions.

C.   Defendants Anticipate Discovery Will Go To Questions of Material Fact Challenging Whether Plaintiffs Have Met Their Burden and Supporting Various Defenses

Without the benefit of any information beyond what is contained in Plaintiffs' Motion, Defendants anticipate discovery will allow Defendants to raise questions of material fact on various issues.[11]  As an initial matter, while Plaintiffs assert "Defendants [have not] raised any defenses to payment" (Kricorian Aff. ¶ 19; Mot. at 10), Defendants were unaware, until being informed of this litigation, of either the Note or Note Agreement, and Defendants have in no way waived their right to assert defenses.  *See* Medina Decl. ¶¶ 23-31.  Additionally, with regards to Petróleo, while the purported guarantee within the Note Agreement included certain waivers (*see* Mot. at 10-11), Petróleo is still entitled to raise certain defenses and challenge Plaintiffs' claims.

1.   PDVSA's Defense of Impossibility of Payment

At this stage of the litigation, PDVSA primarily intends to raise the defense of impossibility of performance, as it was impossible to make payments on the Note and under the Note Agreement.[12]  Performance is excused when (1) the means of performance have been destroyed, thus making performance objectively impossible, and (2) the impossibility was

---

[11] Defendants assert these potential arguments and defenses without waiver to any of their rights, and specifically reserve the right not to pursue any of these arguments or defenses in the future or to pursue additional arguments or defenses.

[12] PDVSA also will pursue the defenses Petróleo currently intends to raise, as well as challenge Mr. Kricorian and the assertions contained within the Kricorian Affidavit.  *See infra* at 20-21.

produced by an unanticipated event that could not have been foreseen or guarded against.  *See Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 29 (2d Cir. 2018).  The defense is resolved on a case-by-case analysis of the facts.  In the context of non-payment because banks refused to process payments, impossibility rests on the contract at issue and whether performance on *that* contract was possible—not whether any remotely similar performance on *other* contracts was feasible; and the analysis of whether payments were possible looks at the universe of banks at issue *for the specific debt issuance in the case*, not *all* banks or transactions anywhere in the world.  *See Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, 82 F.4th 161, 173 (2d Cir. 2023) (PDVSA was not required "to submit evidence from every bank in the world establishing that not one of them would have processed the payments," and only needed to examine facts concerning banks relevant to the underlying dispute); *Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*, 82 F.4th 144 (2d Cir. 2023) (same).

Here PDVSA expects discovery to show that it wanted to and attempted to make payments on the Note and Note Agreement, but financial institutions refused to process the payments.  Given the growing United States[13] economic sanctions against Venezuela, and thus PDVSA, banks were changing their internal risk policies to prohibit transactions to or from PDVSA, despite the transactions technically being legal under the sanctions.[14]  Medina Decl. ¶¶ 7-12, 34.  The timing of the purported late payments under the Note and the alleged cessation

---

[13] Weatherford GmbH is a Swiss company and payments under the Note and Note Agreement were required to be made to their office in Switzerland.  Medina Decl. ¶ 25.  Defendants reserve all rights concerning the impact of any Swiss sanctions and policies on how financial institutions refused to process payments.

[14] Even though Defendants and Weatherford Latin America are Venezuelan companies, and Weatherford GmbH is a Swiss company (Kricorian Aff. ¶ 2), United States sanctions still would impact financial institutions' decision to process payments on the Note and Note Agreement as both require payments be made in United States Dollars.  Medina Decl. ¶ 25.

of payments fits with this defense.  The United States' sanctions began to develop in earnest in July 2017.  *Id.* ¶ 9.  Plaintiffs allege that PDVSA made timely payments on and before June 2017, but then made late payments in September and December 2017 and missed its payments on and after March 2018.  Kricorian Aff. ¶¶ 8-9.  Moreover, it appears from the limited purported communications attached to the Motion that the Plaintiffs and Defendants were acutely concerned with whether banks would process PDVSA's payments.  *See* Kricorian Aff. Ex. 5 at 1-2 (Mr. Silverman stating they "have confirmed with our banking institution JP Morgan that they can receive payment in EURs from Gazprom Bank").[15]  Given that banks were changing their internal policies to prohibit processing PDVSA transactions from July 2017 onwards, and PDVSA allegedly began to have difficulties making payments on the Note and Note Agreement starting with the September 2017 payment, it is likely discovery will demonstrate that PDVSA wanted to make payments but that it was impossible for it to do so given the refusal by third-party banks to process payments from Defendants to Plaintiffs.[16]

---

[15] Even if this statement by Mr. Silverman in this inadmissible email is true, it does not resolve the question of impossibility.  Every bank in the transaction chain (with funds moving from PDVDA's bank, to Weatherford GmbH's bank, to Weatherford Latin America's bank) must approve the transaction at the time the transaction is made, not just JP Morgan.  Moreover, as explained *infra* at 21-22, while JP Morgan may have been willing to process a payment from PDVSA to Weatherford GmbH at the time of the email, it (or any bank in the chain of the transactions) may have subsequently decided to reject the transaction, particularly upon discovering the end-recipient was a Venezuelan company, Weatherford Latin America.  Medina Decl. ¶ 34.

[16] A current motion for summary judgment on PDVSA's impossibility defense in pending in *Lovati v. Petróleos de Venezuela, S.A.*, 19-cv-4799 (S.D.N.Y.), which was only briefed following fact and expert discovery.  PDVSA acknowledges it has raised the impossibility defense unsuccessfully previously.  In both *Dresser Rand* and *Red Tree* the Courts found impossibility did not apply, but only after permitting discovery following the denial/stay of CPLR § 3213 summary judgment motions.  *Dresser Rand Co. v. Petróleos de Venezuela, S.A.*, 19-cv-2689 (S.D.N.Y.), Dkts. 32, 59, 150; *Red Tree Invs. LLC v. Petróleos de Venezuela, S.A.*, 19-cv-2519 (S.D.N.Y.), Dtks. 99, 137.  As noted above, the Second Circuit in both cases stressed that

2.      Defendants' Defenses of Actual Payment and Failure of Consideration

A guarantor, no matter what waivers are contained within a guarantee, can always raise the defenses of actual payment and failure of consideration.  *See Faunus Grp. Int'l, Inc. v. Ramsoondar*, No. 13CV6927 HB, 2014 WL 2038884, at *2 (S.D.N.Y. May 16, 2014).  As explained *supra,* Defendants possess no documents regarding any of the actual or attempted payments related to the Note and Note Agreement, and have no knowledge or information concerning the Novation Agreement that purportedly acted as consideration—as far as Defendants are aware, no consideration was granted, no contracts were entered into, and no payments were missed.  Medina Decl. ¶¶ 23-29.  Defendants have already issued a request for documents to Plaintiffs (*infra* at 22) regarding payments Plaintiffs received from Defendants, and the purported Novation Agreement that acted as consideration, of which Defendants have no knowledge.  *See* Medina Decl. ¶¶ 26, 31, 32.  As Plaintiffs presumably possess information regarding both these items (*id*. ¶ 36), it should be no material burden for Plaintiffs to produce such documents and assure Defendants that neither defense applies.

3.      Defendants Intend to Challenge that Plaintiffs Have Met Their Burden and Can Prove Each Element

While Plaintiffs' assert that they have "established a *prima facie* case" (Mot. at 9), Plaintiffs' motion relies on unchallenged and inadmissible evidence, and Defendants have cause to believe that Weatherford Latin America prevented Defendants' performance.

First, Defendants must be allowed to challenge the veracity of the statements made in the Kricorian Affidavit.  *Rekor Sys., Inc. v. Loughlin*, No. 19-CV-7767 (LJL), 2022 WL 789157, at

---

PDVSA's impossibility defense turned on the facts of each case, including the bank policies of the financial institutions that had a relation to those specific cases.  *Red Tree Invs.*, 82 F.4th at 171-73; *Siemens Energy, Inc.*, 82 F.4th 157-59.

*8 (S.D.N.Y. Mar. 14, 2022) (Liman, J.) (denying summary judgment under FRCP 56(d) where defendants relied upon declarations, and declarants "had not been subject to deposition nor had Plaintiff had the opportunity to take any other discovery to challenge their assertions.").  Mr. Kricorian was unknown to Defendants prior to this lawsuit (*see* Medina Decl. ¶¶ 23-29), and Defendants have not had an opportunity to depose Mr. Kricorian or obtain any information that may challenge his assertions.  For example, Mr. Kricorian asserts that "Weatherford has fully performed its obligations under the Note Agreement and Note, including any obligations or conditions necessary to bring this action" (Kricorian Aff. ¶ 19), but Defendants have had no opportunity to take discovery regarding Plaintiffs' actions or challenge this self-serving assertion.  Moreover, as addressed *supra* at 3-9, the Kricorian Affidavit has a variety of issues that Defendants must be allowed to challenge, including (1) who Mr. Kricorian works for, (2) what companies' files did he review, (3) what personnel and documents, including documents not attached as exhibits, he reviewed to create his affidavit, (4) how these documents were created and maintained, and (5) how he can authenticate any of the exhibits to which he lacks any personal knowledge.

Second, under the same vein as PDVSA's impossibility defense, Defendants believe that it is likely Defendants were unable to perform because financial institutions refused to process payments to Weatherford Latin America.  Given the sanctions and financial institutions' internal risk policies, financial institutions were already refusing to process payments from Defendants. *Supra* at 17-19.  However, even if financial institutions may have been willing to make one-off exceptions to their policies, the fact payments under the Note and Note Agreement would have wound up back in Venezuela with Weatherford Latin America—the purported beneficiary under the Note—may have raised red flags with financial institutions that would have resulted in them

refusing to transmit funds to Weatherford Latin America.  Medina Decl. ¶ 34.  Defendants must

be permitted discovery not only into the impossibility defense, but also Defendants' belief that

Plaintiffs prohibited Defendants' performance by not engaging financial institutions that would

accept Defendants' payments due to Weatherford Latin America's status as a Venezuelan

company conducting business in the oil and natural gas industry.  *Chem. Bank v. Stahl*, 712

N.Y.S.2d 452, 462 (1st Dep't 2000) (noting party breaches implied covenant when its actions

prevent the other party from carrying out the agreement).

     D.       <u>Defendants Have Already Propounded Discovery on Plaintiffs, and Anticipate</u>
<u>Seeking Letters of Request to Third-Party Institutions Following the Court's</u>
<u>Denial of Plaintiffs' Motion</u>

     In order to examine and support Defendants' arguments and defenses, Defendants

anticipate seeking discovery from Plaintiffs and third-party financial institutions.  First,

Defendants have already, on January 3, 2024, issued an initial request for documents to

Plaintiffs.[17]  Medina Decl. ¶ 36.  This request sought information regarding, amongst other

things, the formation of the Note Agreement and the Novation Agreement, the payments made

by Defendants, and attempts made by Defendants to continue payment (and any efforts by

Plaintiffs to facilitate the receipt of such payments).  Broughel Decl. Ex. A.[18]  To date, Plaintiffs

have not responded to this request for documents.  Medina Decl. ¶ 36; *see also Liddy v.*

*Cisneros*, 823 F. Supp. 164, 172 (S.D.N.Y. 1993) (denying summary judgment pursuant to

FRCP 56(d) where "at the time the defendants moved for summary judgment, discovery in this

---

[17] Defendants reserve all rights to issue additional discovery to Plaintiffs.

[18] "Broughel Decl." refers to the declaration of Kevin P. Broughel, dated January 29, 2024, filed
contemporaneously herewith.

litigation had not started," and at the time plaintiffs opposed the motion "defendants had not yet responded to plaintiffs' first discovery requests for documents and interrogatories.").

Second, Defendants anticipate that within the documents in Plaintiffs' possession responsive to Defendants' first request for documents are the identities of financial institutions that either were used or were attempted to be used to process payments on the Note and Note Agreement. Based upon this discovery, Defendants will likely request this Court issue letters of request (or to the extent the institutions are domestic, Defendants' counsel will issue subpoenas) for documents concerning Defendants' attempts to make payments on the Note and Note Agreements, including why the final payments were purportedly made late and why payments purportedly stopped. Medina Decl. ¶ 37. Defendants anticipate discovery will demonstrate that Defendants sought to make payments on the Note and Note Agreement, but financial institutions refused to process the payments because the payments originated with Defendants, were destined for Weatherford Latin America, or both. *Id.* ¶ 34.

**IV.** **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Summary Judgment should be denied and discovery should be permitted to commence in the normal course, either on the merits or pursuant to FRCP 56(d).

Dated: January 29, 2024
      New York, New York

**PAUL HASTINGS LLP**

 *s/ Kurt W. Hansson*        
Kurt W. Hansson
Kevin P. Broughel
James L. Ferguson
Zachary D. Melvin
200 Park Avenue
New York, New York 10166
Telephone: 212-318-6000
Facsimile: 212-319-4090
kurthansson@paulhastings.com
kevinbroughel@paulhastings.com
jamesferguson@paulhastings.com
zacharymelvin@paulhastings.com

*Counsel for Defendants Petróleos de
Venezuela, S.A. and PDVSA Petróleo,
S.A.*