```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   WEATHERFORD SWITZERLAND
     TRADING AND DEVELOPMENT GMBH,
 4   solely in its capacity as
     Administrative Agent of a
 5   certain indenture dated as of
     June 28, 2016; and WEATHERFORD
 6   LATIN AMERICA, S.C.A.,

 7                  Plaintiffs,

 8          v.                              23 CV 10703 (LJL)

 9   PETROLEOS DE VENEZUELA, S.A.
     and PDVSA PETROLEO, S.A.,
10
                 Defendants.            Oral Argument
11   ------------------------------x
                                        New York, N.Y.
12                                      January 10, 2025
                                        10:35 a.m.
13
     Before:
14
                       HON. LEWIS J. LIMAN,
15
                                        District Judge
16

17                         APPEARANCES

18   COHEN TAUBER SPIEVACK & WAGNER, P.C.
          Attorneys for Plaintiffs
19   BY:  SARI E. KOLATCH

20   PAUL HASTINGS LLP
          Attorneys for Defendants
21   BY:  JAMES L. FERGUSON
          KURT W. HANSSON
22

23

24

25
```

```
1              (Case called)
2              MS. KOLATCH:  Good morning, your Honor, Sari Kolatch,
3    Cohen Tauber Spievack & Wagner, for the plaintiffs.
4              THE COURT:  Good morning.
5              MR. FERGUSON:  Good morning, your Honor, James
6    Ferguson from Paul Hastings on behalf of defendants.  With me
7    is Kurt Hansson, also from Paul Hastings.
8              THE COURT:  Good morning.
9              MR. HANSSON:  Good morning, your Honor.
10             THE COURT:  Before me is the motion of plaintiff for
11   summary judgment, which was made in lieu of complaint, and then
12   the motion of defendant to strike.
13             I'll hear first from counsel for plaintiff and then
14   counsel for defendant.
15             The obvious question in front of me is why I should
16   grant a motion for summary judgment at this stage, prior to
17   there being any discovery.
18             Let me hear from plaintiff.
19             MS. KOLATCH:  Your Honor, do you want me to stand here
20   or go to the podium?
21             THE COURT:  I think it's easier for everybody if
22   you're at the podium.
23             MS. KOLATCH:  Everybody except women who are five feet
24   tall.
25             THE COURT:  It's OK.  I can see you.
```

```
 1              MS. KOLATCH:  Good.

 2         Your Honor, I'm actually going to go -- rather than

 3    rehash the case, which your Honor --

 4              THE COURT:  I have read the papers.

 5              MS. KOLATCH:  I am going to go to the question that

 6    you asked, why should you grant summary judgment now.  That's

 7    because there is no basis for discovery here.  The

 8    defendants -- there is a note agreement, an unambiguous note

 9    and a note agreement.  We have established that payments were

10    not made under a note at a certain point, and they are in

11    default.  In order to proceed, the defendants need to establish

12    that there would be some material fact that would be shown from

13    discovery.

14              THE COURT:  Aren't they entitled, at least, to take

15    the deposition of Mr. Kricorian or Ms. Ocando -- I may be

16    mispronouncing the names -- just to establish the authenticity

17    of the note and the note agreement and the payment history?

18    They say the first they heard of this note was when they were

19    sued.  They don't have access to it.  They don't have access to

20    anybody who knows anything about it.  It may not be lengthy

21    discovery, but it's a lot of money you're suing for.

22              MS. KOLATCH:  Fair enough.  I understand that.

23         I think the issue is, the sort of discovery they said

24    they needed is not just, let me speak to Mr. Kricorian and

25    Ms. Ocando.  It's, we want everything that shows the
```

1    establishment -- the creation of the note, which it is an

2    unambiguous document on its face.  They have it now.  And they

3    have not said it's ambiguous, we need information about the

4    formation because that will create a material fact.  They want

5    information about the novation that is the consideration for

6    the note.  But under New York law, when the consideration is

7    set forth in the note and it says for value received, they are

8    estopped from claiming lack of consideration.  And they want

9    discovery on the impossibility defense, which here at this

10    point is no longer available.

11         First, they say that they can -- it's impossible

12    because perhaps they couldn't make payments at the time due to

13    the sanctions.  But this has now already been litigated in the

14    *Red Tree* and *Siemens* action.  The Second Circuit has found that

15    the fact that the same defendant, PDVSA and Petroleo, at the

16    time, did not, through the same banks that it would make

17    payments here, because it was the same time period and it's the

18    same defendant, and did not show that they did everything

19    possible to try and make payments and it was impossible.  For

20    example, the Second Circuit found they didn't show that they

21    hired an expert on sanction law to advise with the banks to

22    show them that payments could be made.

23         THE COURT:  That was just one factor that the Court

24    mentioned.  The Court didn't say that that factor alone was

25    dispositive.

1         MS. KOLATCH:  The Court said that that showed they
2    didn't establish impossibility.  But the Court also found that
3    they did not establish that it was impossible to make payments
4    through the banks they were dealing with at the time.  They are
5    the same banks they would be dealing with to pay my client.
6    Because it was the same time period, it's the same PDVSA.

7         So if they weren't able to show that they did
8    everything possible, that it was completely impossible, not
9    difficult, but impossible to make payments through those banks
10   in that matter, how can they possibly show that it was
11   impossible to make payments through those same banks during the
12   same time period on this note.  It's the same facts.  They
13   can't retroactively go back and change the facts.

14        What PDVSA said is, that case related to those banks.
15   But those are PDVSA's banks.  They are going to be the same
16   banks at the same time period.  There is not like there was a
17   separate set of banks that they say they used here.  Because if
18   they were using those banks in 2018 on that note, they could
19   use those same banks in 2018 on this note, and they have not
20   shown it's impossible.

21        The other issue, and this was -- and my memo of law
22   mistakenly says Judge Stanton.  It was Judge Castel.  In the
23   *Red Tree* decision he said, in order to raise the impossibility
24   defense, it has to be unforeseen that payment would be
25   impossible, and he said the sanctions that they -- the initial

1  sanctions they complain about or they refer to were in effect

2  when they entered into the note, which means the parties could

3  have addressed the issue of the sanctions at the time they

4  entered into the notes because it was foreseeable.

5          THE COURT:  Did the Second Circuit address that?

6          MS. KOLATCH:  They did not address it.  But they

7  didn't find that it wasn't grounds, and I think the Court can

8  consider it.  So they didn't say -- what Judge Castel said is,

9  it was foreseeable that this could happen, and you could have

10  accounted for it in the note.

11          But, instead, Section, I think it's 5.02 of both the

12  note in *Red Tree* and the note here, because they have the same

13  terms, said that the defendants will make sure they get all

14  necessary governmental regulations so that they can comply with

15  their obligations under the note.  And the definition -- I

16  forget whether -- the definition of government is all

17  government.

18          So it was foreseeable there would be sanctions.  Not

19  only didn't they provide for some sort of stay or delay or

20  excuse if these sanctions prevented it, but further said that

21  they would make sure they had all necessary licenses from all

22  necessary governmental entities to comply with the note.  So

23  that's another reason they won't be able to prevail on the

24  impossibility defense.

25          Beyond that, defendant Petroleo, who is the guarantor,

1   cannot avail itself from any of those defenses.

2          THE COURT:  Because it's --

3          MS. KOLATCH:  Unconditional.  That was found in, I

4   believe, *Red Tree* and perhaps also *Dresser Rand*, and that was

5   affirmed on appeal.

6          THE COURT:  That also is well settled law in New York.

7          MS. KOLATCH:  Right.  For those reasons -- and then --

8   I am trying to think -- they had another affirmative defense or

9   another reason they claim that they would need discovery.  They

10  said, maybe we couldn't make payments because Weatherford Latin

11  America was the ultimate beneficiary of the note.

12         But the problem with that is, beyond the fact that

13  it's purely speculative, the payments were not paid to

14  Weatherford Latin America.  They were made to the Weatherford

15  GmbH, which is a Swiss entity.

16         When you are making a wire payment, the bank doesn't

17  know who is going to get the money.  He knows who the immediate

18  recipient is, which is Weatherford GmbH, the Swiss entity.

19         THE COURT:  Which is the administrative agent.

20         MS. KOLATCH:  Yes.  But they don't know what that

21  other entity is going to do with the money.  You don't make a

22  wire payment and put the note agreement along with it so that

23  the bank sees who is going to ultimately get it.  So there is

24  no basis whatsoever for the purely speculative argument that

25  maybe the reason they can't process payments has to do with the

 1   ultimate beneficiary.

 2          Besides that, Weatherford Latin America wasn't subject

 3   to sanctions.  It's not a government agency, so it wasn't

 4   blocked from getting money.  So there is not even a basis even

 5   if the payment was wired directly to that entity, which it's

 6   not under the terms of the notes, to establish that maybe it

 7   was impossible because who the ultimate beneficiary is.  So

 8   that's the reason that it doesn't make sense to have discovery

 9   here, because they have nothing that they are seeking that will

10   provide them with the material issue of fact here.

11          THE COURT:  Let me ask you, on the argument about the

12   impact of *Red Tree* and *Dresser*, it sounds to me that what

13   you're really saying is, they are collaterally estopped from

14   challenging the findings with respect to a possibility because

15   you and I both know that they would be entitled, a new case, a

16   new plaintiff, to litigate the issues except if something like

17   collateral estoppel applied.  A party might fail in its proof

18   in one case, but still decide to succeed on the same issues in

19   the second case.

20          But you haven't made to me an argument based on

21   collateral estoppel, so why aren't they, at least with respect

22   to this motion, not estopped with respect to *Red Tree*, and why

23   can't they just try to litigate the same issues?

24          MS. KOLATCH:  Because they need to show that they will

25   be able to create a material issue of fact.

 1          THE COURT:  You're arguing it goes to 56(d) factors.

 2          MS. KOLATCH:  Yes.

 3          They just can't show that because they will not be

 4   able to show that it was an impossibility because those same

 5   facts exist.  So if they were able to show impossibility, they

 6   would have shown it on the last two cases.

 7          So this is just not similarly -- that issue has

 8   been -- they don't even claim that there is something

 9   additional that they could show here.  Perhaps there is.  And

10   56(d), it's not supposed to be just a random fishing

11   expedition.  It's really supposed to be that they have a basis

12   to believe that there is something here that will create a

13   material issue of fact, and there just isn't.  It will serve

14   the purpose of -- certainly will serve the purpose of delay,

15   which I think is a factor here.

16          And I appreciate, I very much appreciate the situation

17   in Venezuela.  I really do.  I understand that that's

18   complicated.

19          THE COURT:  There may have even been news today.

20          MS. KOLATCH:  There was.

21          My client didn't run to court in 2018, when he could

22   have, but eventually has a statute of limitations that he has

23   to pursue.

24          But then delaying the case for however much longer it

25   takes to go around the world to see if maybe some banks said no

1    to them, which in and of itself the Second Circuit has already

2    said is insufficient, is just a much longer delay and expense

3    that is not going to yield a material issue of disputed fact

4    here.

5         THE COURT:  Let me ask you about the availability of

6    Kricorian and Ocando.  If discovery were limited to just those

7    depositions, how long would it take for you to arrange that and

8    for your client to produce, if they have not already, the

9    records from the files that establish that the documents are

10   authentic and everything with respect to the payment history?

11        MS. KOLATCH:  That's a good question in terms of that.

12   I'll be honest.  We filed the motion a while ago.  I haven't

13   checked recently their availability.

14        THE COURT:  I apologize.  The number of cases -- your

15   case has just come up.

16        MS. KOLATCH:  I didn't mean it for that reason.

17   Honestly, I didn't even establish -- I haven't even checked

18   that they are still there, which they may be.  I just really

19   have not updated that.

20        In terms of the authentication of the note and the

21   note agreement, the original is in a safe in Houston, and

22   Mr. Kricorian is the custodian of that safe and literally took

23   the original document out of the safe, photocopied it, and put

24   it back in.  So I think authentication is going to be pretty

25   easy to establish.

1          The notice of default under the terms of the agreement

2    can be sent by email.  We have the email sending the notice of

3    default.  The issue of the default can be established by

4    someone with firsthand knowledge of it, which is -- and was

5    established for the affidavit.

6          THE COURT:  It's an unusual case.  Usually, with a

7    guarantee you could proceed quite easily by summary judgment in

8    lieu of complaint because the counterparty that you have sued

9    is the counterparty that you dealt with or has access to the

10   people who you dealt with.

11         MS. KOLATCH:  I understand that.  I understand.

12         The cases to consider it have not held that, because

13   of that, there is a higher standard for the plaintiff on a

14   motion for summary judgment.  This is really the sort of case

15   that summary judgment is best suited for.

16         THE COURT:  I'll give you some time to rebut if there

17   is something unusual that comes up from the defendants.

18         MS. KOLATCH:  Thank you, your Honor.

19         THE COURT:  Let me hear from defendants.

20         The obvious question for defendants is, what is it

21   that you are seeking in terms of discovery?  Give me one issue

22   that you're seeking in terms of discovery that is other than

23   speculative and that would provide a basis for me delaying in

24   issuing summary judgment here.

25         MR. FERGUSON:  Yes, your Honor.  I think it's

 1    important that we acknowledge the two different defendants.

 2         We have PDVSA Petroleo, the guarantor, which, as we

 3    all agreed, issued an absolute, nonconditional guarantee

 4    waiving defenses.

 5         Under New York law, there are only two defenses that

 6    that guarantor can raise:  Actual payment, which right now we

 7    are not -- we don't have any basis to put forward.  We don't

 8    have those documents.  But then failure of consideration.

 9         So in that case that's where we are addressing the

10    issue of, we should at least be able to take the deposition of

11    these individuals who submitted a declaration to confirm what

12    was going on here, that there was a novation agreement, that

13    the novation applied this consideration.  That's PDVSA

14    Petroleo.

15         But then we have PDVSA itself.

16         THE COURT:  Isn't that all established on the face of

17    the note itself?

18         MR. FERGUSON:  The note itself says that it's for

19    valid consideration, your Honor.  However -- and I apologize.

20    I didn't come with a case.  I have firsthand knowledge of cases

21    in New York State where there have been questions of failure of

22    consideration where the document said it was for valid

23    consideration, and summary judgment in lieu of complaint was

24    denied for that purpose, where there were questions about if

25    there was consideration.  But that is a question that can come

1    up.  That's a valid defense that can be raised on summary

2    judgment in lieu of complaint for a guarantor.

3         THE COURT:  Are you challenging here or seeking

4    discovery with respect to either the authenticity of the

5    documents or the fact that the payments ceased?

6         MR. FERGUSON:  Your Honor, I think the payments ceased

7    is a question that we have based on the record they have put on

8    their *prima facie* case.

9         I will acknowledge, your Honor, I have no reason to

10   come before you and say this is inauthentic or that there were

11   payments made.  The first part of our motion for summary

12   judgment is just saying they did not meet their *prima facie*

13   case of putting admissible evidence in.

14        However, we acknowledge that if your Honor believes

15   that there is no reason to be pursuing that, then, yes,

16   judgment could be entered against PDVSA Petroleo because it

17   cannot pursue the impossibility defense.

18        However, we do believe --

19        THE COURT:  I understand what you're saying, I think,

20   but let me push you a little bit further.

21        Are you disputing and seeking discovery with respect

22   to, number one, the authenticity of the note and the note

23   agreement?  If I were to find that that's the only potential

24   issue as to which you could get discovery, is that discovery

25   you want, or are you prepared in the record here to say, we are

1    not going to dispute that.  If, Judge, you think that's the

2    only potentially open issue, then go ahead and enter summary

3    judgment.

4         MR. FERGUSON:  For PDVSA Petroleo, your Honor, putting

5    aside impossibility for right now, the second Kricorian

6    affidavit, we would acknowledge, is sufficient at that point to

7    authenticate the note and note agreement.  And after opposing

8    counsel's reply, we did reach out to Hogan Lovells, who

9    provided us a copy of the note agreement.  They did not have a

10   copy of the note.

11        But based on the affidavit itself, we would say we are

12   not going to challenge that on its face.  However, we do

13   believe that we are entitled to discovery, and we should be

14   allowed to take a deposition.  But if your Honor --

15        THE COURT:  I hear you now saying you're not

16   challenging that they have made a showing with respect to

17   authenticity.  There is some law that would suggest that even

18   if they have made a showing of authenticity, you could take the

19   deposition of Mr. Kricorian and say to Mr. Kricorian, did you

20   really take it out of the safe?  Is this the same document you

21   took out of the safe?  How are you sure you took it out of the

22   safe?  I am not sure what you would get from that.  But I might

23   not be prepared to foreclose you from that.  I don't know if

24   you want that or not.

25        MR. FERGUSON:  Yes, your Honor.

1          I think on face value what they have put in we would

2     say is sufficient, but we would say that, for summary judgment,

3     under Rule 56, we should be allowed to depose these declarants

4     and question them on that.

5          What I'm saying is, we don't have a basis to say right

6     now, based on the second declaration, that there is something

7     missing.  We are saying, we have not been given the opportunity

8     to question them.  So we would take that opportunity to depose

9     them on those questions.  That's for PDVSA Petroleo and PDVSA.

10    PDVSA also has the impossibility issue.

11         For impossibility, your Honor, I'll start with the *Red*

12    *Tree* and *Siemens* decisions.  I think what's important there to

13    look at is, both of those decisions were reached after

14    extensive discovery.  I believe in *Red Tree* the district court

15    decision noted about 13,000 documents were produced.  In

16    *Siemens* it was actually posttrial findings.  There was a whole

17    trial of facts.

18         In reading the decisions, you see it is actually very

19    fact intensive.  It's about the correspondence going back and

20    forth between the parties and the banks.

21         And, importantly, the Second Circuit, in both cases,

22    wrote the same paragraph, almost identical paragraph, and what

23    they said was that it was not that PDVSA had to prove no bank

24    in the world would process a payment.  What it was is that

25    PDVSA had to demonstrate that the banks that had previously

1    made payments on those notes could not make those payments now.

2        And in the *Dresser Rand* and the *Red Tree* decisions,

3    they specifically listed out different banks.  The *Siemens*

4    decision, the Second Circuit listed out banks specific to the

5    Siemens note.  And in the *Red Tree* decision, they listed out

6    banks specific to the Red Tree note.  But it's the exact same

7    paragraph.

8        In other words, your Honor, what the Second Circuit is

9    acknowledging is, this is a fact-intensive question.  We have

10   to look at the banks at issue on each of these notes to see

11   whether payment was impossible or whether it was possible.

12        THE COURT:  Wouldn't your client have had the same

13   interest in each of those cases as it has now to develop the

14   evidence with respect to impossibility?  And if what he

15   developed in those cases was not sufficient to satisfy the

16   district court or the circuit court, why would there be reason

17   to believe in this case that you could develop evidence that

18   would satisfy me?

19        MR. FERGUSON:  Your Honor, each case here regarding

20   this impossibility with banks is different per the note

21   agreement or the contract.

22        I think what is illustrative here is actually the

23   ongoing *Lovati* case that is going on in this court before Judge

24   Carter.  There, summary judgment motions have been briefed for

25   over a year.  Judge Carter is still examining them and figuring

1    out how to rule on impossibility.  What we found there -- and I

2    speak of that because that's the one I'm most closely involved

3    with -- is, contrary to what opposing counsel said, in these

4    cases banks are evaluating the entire stream of what's going

5    on.

6            To take a step back, banks, as we learned through

7    expert testimony, are very risk-adverse institutions.  They do

8    not want to run afoul of any regulations or any sanctions.  And

9    so when a sanction comes out naming you, me, PDVSA, even if it

10   says Mr. Ferguson can only not do business with Mr. Hansson, if

11   I go and try and do a transaction with you, your Honor, banks

12   are going to flag it, and a lot of banks are going to say, I

13   don't care that that sanction only says that I cannot do

14   payments to Mr. Hansson.  We are not going to touch any

15   payments Mr. Ferguson does.  We are not going to do any of

16   them.

17           That's what happened here with PDVSA.  Banks were

18   coming -- we were going to banks and saying, please process

19   this payment, and they were saying, no, we were not going to.

20   And in fact -- this is even more extreme in the *Lovati* case

21   where there was a general license issued by OFAC saying these

22   payments on these notes are permissible.  OFAC expressly is

23   saying, you can do this.  And banks were still saying, no, we

24   are not going to do it.

25           What then happens is, when we go to *Red Tree* and

1    *Siemens*, when you're dealing with these banks, the banks are

2    saying, OK, give me more information.  Tell me what's going on.

3    Tell me about this note agreement.  Banks are actually asking

4    for this note, and you're asking what's happening.  And they

5    are looking at this entire trail because, understandably, if

6    banks didn't care where the end recipient was, to get around

7    the sanctions for Mr. Hansson, I could just send the money to

8    you, and then you can send it to Mr. Hansson.  Banks realize

9    that's a big loophole.  So they look at this transaction

10   process, and they see where this is going.

11          Any bank in that chain, so from PDVSA to the

12   administrative agent, which here was the Weatherford Swiss

13   entity, then to Weatherford Latin America, any bank in that

14   chain can at any point say, no, we are not going to take this

15   payment, and the whole thing stops.  You have to have every

16   bank approve it.

17          What we are saying is different here in *Red Tree*

18   versus *Siemens* --

19          THE COURT:  You will correct me if I'm wrong, but I

20   think the note would have been satisfied if the payment was

21   made to the administrative agent, right?  There wouldn't need

22   to be any requirement, in terms of the note, that the money

23   ends up being remitted to Weatherford Latin America.

24          MR. FERGUSON:  Correct, your Honor, under the terms of

25   the note.  But the banks aren't caring about that, your Honor.

1    The banks are seeing where this is ending up going.  They are

2    going to ask those questions.  And they won't allow that

3    payment to go to the administrative agent because they are

4    seeing what's then going to next happen is the administrative

5    agent is going to send it on.

6         So we found this in *Lovati*, where the administrative

7    agent was a Delaware reputable banking institution, and no bank

8    was willing to be the bank for the administrative agent.  The

9    administrative agent -- an independent third party sent a

10   formal letter listing out all these banks they reached out to,

11   including JP Morgan, to act as their bank, and they all said

12   no, they refused to do it, even though it was going just to the

13   administrative agent, and that was totally legal under OFAC.  a

14   license had been issued.

15        And here, your Honor -- and this is where then we are

16   saying there is a difference between *Red Tree* and *Siemens* in

17   here.  Not only do we have different parties, but, again, in a

18   risk-adverse environment what the banks are being asked to do

19   is take a payment from PDVSA, a sanctioned entity, it's going

20   to go to a Swiss bank account and it's going to go back to a

21   bank account in Venezuela.  That is going to raise all sorts of

22   red flags that are not at issue in *Red Tree* and are not at

23   issue in *Siemens*, and not even at issue in *Lovati*.  That's why

24   impossibility is such a fact-intensive question.

25        THE COURT:  One of my problems listening to your

1  argument is that you are mentioning a number of things now that

2  are not in a 56(d) application that you have made.  You are

3  referring to a case in another courtroom and saying, well,

4  based upon what we have learned from that other case, there may

5  be some discoverable things.

6  　　　　　Why shouldn't you lose on that simply because you have

7  not done that in the 56(d)?

8  　　　　　MR. FERGUSON:  Your Honor, Mr. Medina's declaration

9  expressed that, based on the PDVSA's experience, which includes

10 its other litigations, that banks were risk adverse and were

11 not willing to process payments from PDVSA to other financial

12 institutions.

13 　　　　　The discovery that is necessary here is to find out

14 why payments stopped and specifically to look into those

15 financial institutions that made payments on this note, which,

16 per *Siemens* and *Red Tree*, is what we should be examining, is

17 the financial institutions relevant here, and that we expect

18 that discovery, based on defendants' experience, will show that

19 those financial institutions refuse to process payments to the

20 administrative agent.

21 　　　　　Mr. Medina did not cite to documents in *Lovati*, but

22 his sworn declaration states that, based on their experience,

23 they know banks are risk adverse and that this is how it plays

24 out.

25 　　　　　We would be more than happy to submit a supplemental

1    declaration, your Honor, from Mr. Medina attaching these *Lovati*

2    documents, but I believe his declaration, on its face,

3    summarizes what I've gone through.

4              THE COURT:  I take it what you're saying, though, the

5    impossibility does not apply to the guarantor.  You agree to

6    that?

7              MR. FERGUSON:  Yes, your Honor.

8              THE COURT:  Let me hear from plaintiff.

9              MS. KOLATCH:  I just want to first address, your

10   Honor, my adversary's statement that for the guarantor they

11   have two defenses:  Full payment and lack of consideration.

12             Lack of consideration is not a defense.  And the case

13   they cite in their brief for that proposition is *Faunus Group*

14   *International v. Ramsoondar*.  But there --

15             THE COURT:  Give me the citation.

16             MS. KOLATCH:  2014 WL 2038884.

17             THE COURT:  Give me one moment.

18             Your Honor, I would just point out that the guarantee

19   there didn't have a waiver of defenses, and that's a

20   significant distinction.

21             I am not familiar with any case law that says that

22   if -- we cited cases that stand for the proposition that if the

23   consideration is stated in the agreement and it says for value

24   received, a defendant is estopped from claiming lack of

25   consideration.

1          I know Mr. Ferguson said he thinks there are cases to

2     the contrary.  They are not cited in the briefs, and I have not

3     seen them, so I can't address them.

4          I think the only defense available to Petroleo is lack

5     of payment.  They can't claim lack of consideration.

6          In terms of the impossibility, I read the *Red Tree*

7     decision a little bit differently.  I think there the Court

8     said that PDVSA -- PDVSA had provided evidence that some of the

9     banks it dealt with rejected payments once, and the Court found

10    that that wasn't sufficient, that they had to have provided

11    evidence that other banks would have refused to initiate or

12    process payments.  And PDVSA's response is, we can't go to

13    every bank in the world.  And the Court said, we are not saying

14    you have to go to every bank in the world.  Go to the banks

15    also that you use.  And they are the same banks they used here.

16    They don't even claim we used a different set of banks there.

17         Frankly, if they didn't establish it for these banks

18    in *Red Tree*, that means they wouldn't have established it for

19    these banks here.  Because if they could make payments through

20    one of these banks in 2018 to *Red Tree*, they can make payments

21    to my client.

22         I am hearing for the first time this issue in *Lovati*.

23    I have no ability to respond to it in terms of what banks ask.

24    I just don't understand how they turn to the administrative

25    agent and say, hey, guys, what are you going to do with this

 1    money once you get it?  And won't process the payment unless

 2    the administrative agent says, I promise I won't send it back

 3    to a company in Latin America.  There is just nothing in this

 4    record that supports that, and it just doesn't make sense as a

 5    practical matter.  I understand they will look to who the party

 6    receiving it is, but what that party does with the money --

 7        There is one other issue also.  Payment didn't have to

 8    be made just by wire.  In the note agreement they could have

 9    made payments by any means.  They would also have to show that

10    they couldn't just write a check and deliver it to the

11    recipient.  It doesn't have to go through a wire.

12        That's a distinction from *Lovati* because in *Lovati*, I

13    believe, they argued that they are bound by the method of

14    payment in the indentures.  That's not true here.  They had

15    other means of making payments.

16        THE COURT:  I was looking at your language from *Red*

17    *Tree*.

18        Let me present to you my challenge with respect to

19    your motion and get your views.

20        I think there is great force to your argument that the

21    defendants should not be permitted to have an extended period

22    of time of discovery, an expensive period of time for discovery

23    to look at a number of different banks.  I think you make some

24    very powerful points with respect to *Red Tree*.

25        On the other hand, what you are seeking from me on

1    your summary judgment motion is rather extraordinary relief.

2    It's extraordinary relief in that it's before there has been

3    any discovery whatsoever with respect to a party who is in

4    control of the documents.

5          What I'm struggling with is whether there isn't some

6    intermediate answer where I would establish a very short period

7    of time of discovery, permit them to take the deposition of

8    Mr. Kricorian or Ms. Ocando -- for whatever value that has and

9    for a very short period of time.  I don't think it would need

10   to be seven hours -- and give them a limited period of time to

11   see if they can develop testimony from their banks, that the

12   banks would not have processed these payments, and then permit

13   you to make your renewed motion for summary judgment in

14   something like three months' time.  It seems to me that that

15   would be consistent with the Second Circuit's view with respect

16   to early summary judgment motions.

17         Let me have your views.

18         MS. KOLATCH:  I think it's reasonable, your Honor.

19         My only concern here is that we end up -- and I

20   appreciate your Honor saying it would be narrow, but we end up

21   going off course.  Because the proposed discovery requests

22   served, even though there are 11 of them, were exceptionally

23   broad and provided everything about the formation of the note,

24   which is not relevant, everything about communications with

25   anyone about the note, which is not relevant, the novation for

 1    the note, which is not relevant.

 2            If it relates solely to what payments they made and

 3    what payments they didn't make, and I believe there will be

 4    some evidence about my client providing alternative means to

 5    make payments or banks that would accept payments, and they

 6    take two targeted depositions, then I think it's reasonable.

 7            I'm always worried about the creep of discovery.

 8            THE COURT:  I would be worried about that if I were in

 9    your shoes, and I'm a little bit worried about it in my shoes

10    because what I'm proposing would impose on the Court some

11    obligations in terms of managing the case so that we get to a

12    conclusion quickly.  That's my job.

13            Let me hear from defendants.

14            MR. FERGUSON:  Yes, your Honor.

15            Regarding the schedule, I think we can work out to

16    revise the discovery requests we issued to narrow and tailor

17    them.

18            The only hesitation we have is regarding seeking

19    documents from banks.  These are international institutions, to

20    our knowledge.  We will first need to get the documents from

21    plaintiffs as to what banks are at issue on the Weatherford

22    note.  Once we have those, we can immediately issue subpoenas,

23    submit to your Honor letters of request for foreign banks.

24            It's just an issue of -- they identified Novobanco in

25    Portugal in another action, Syracuse, which was ruled in

 1   summary judgment based on *Champerty*, but impossibility was

 2   pursued there as well.  We had sought a letter request against

 3   Novobanco.  They fought that in the Portuguese court for over a

 4   year, but then we successfully won.

 5          Our hope would be, in this case, Novobanco

 6   acknowledging there is a Portuguese court decision saying you

 7   have to respond to PDVSA's request.  They are going to recede,

 8   immediately give the documents.  Because we also had with these

 9   letters of request banks turning to us in three months and

10   giving us the documents.

11          What we would propose, your Honor, is, we will work

12   with opposing counsel, revise those document requests to tailor

13   them to exactly what we need, immediately submit to your Honor

14   any last requests, and we can provide a monthly status update

15   to your Honor of where the discovery is.

16          But we are proposing, instead of three months, six

17   months to realistically deal with the international bank

18   discovery.

19          THE COURT:  I am not going to do that.

20          What I have in mind is that you can make a limited

21   request to the defendants for documents in their possession and

22   take the depositions of Kricorian and Ocando for three and a

23   half hours each, that I would stay all other discovery, and

24   that you would make a motion as to why I should -- that there

25   would be motion practice with respect to expanding discovery at

 1    all where you would have to show that what you're seeking is

 2    something other than a fishing expedition.  If you want to take

 3    the depositions of those two, go at it.

 4            It may be that the form of it is that I permit the

 5    plaintiffs to make a renewed motion for summary judgment.

 6            Let me hear from you, Ms. Kolatch.  I have not

 7    appreciated, thinking about the 56(d) issues, what it was that

 8    defendants were seeking and if what they are seeking is

 9    something that's going to be a lot of delay.  And there is

10    really serious issue as to whether it would be at all material

11    to my decision on summary judgment.  I've got questions about

12    it.

13            Go ahead, Ms. Kolatch.  You can address me from there.

14            MS. KOLATCH:  Just briefly, I think it will be a

15    massive delay because I think in, it might have been *Dresser*

16    *Rand*, but in one of those cases, or *Sumitomo*.  There is another

17    case that was a similar type of note agreement where summary

18    judgment -- there was a 3213 motion in state court that was

19    moved to federal court.

20            They also got a very long period of time to do letters

21    rogatory to all these banks, and they didn't get information.

22    They got -- or from some banks they got, from others they

23    didn't.  They got extensions to get the discovery.  And

24    eventually the Court ruled because it wasn't going to extend

25    discovery anymore.

1          But if the process is now going to all these banks and

2     seeking letters rogatory for information from 2018, I think

3     that is going to be a very, very, very lengthy and overwhelming

4     task.  I think Mr. Ferguson was very forthcoming that it would

5     be lengthy, and I think they won't get it from a bunch of the

6     banks.

7          THE COURT:  Isn't the right disposition, or at least a

8     practical disposition, to say, listen, a two-month period of

9     time for discovery of your client, three-and-a-half-hour

10    depositions of these two deponents, and then you can renew your

11    motion for summary judgment.  And they will put in a 56(d) and

12    try to convince me that there is some discovery out there from

13    other banks that would overcome the Second Circuit's decisions

14    in *Red Tree* and *Dresser*.  I realize that it puts the parties to

15    some additional work, but they are due-process considerations.

16          What's your view, Ms. Kolatch?

17          MS. KOLATCH:  I think we are in the same position as

18    the argument I made at the beginning, which is, I think they

19    have already tried to show that in *Red Tree* and was

20    unsuccessful.  Why is it going to be different here?  It's

21    going to be the same facts.  Why is it going to be a different

22    result?  They couldn't show there that it was impossible to

23    process payment, including not showing that they hired an

24    expert, or here including not showing that they made payment a

25    different way.  They don't just have to make payment through a

1    bank.

2            This is a little bit an exercise that will, without

3    question, result in a significant delay and isn't going to

4    change the equation.  I can make that argument on the next

5    motion, but that's what my argument is going to be.

6            MR. FERGUSON:  Your Honor, may I just make one point?

7            THE COURT:  Yes.

8            MR. FERGUSON:  Instead of potentially losing these

9    three months here, we would just ask that we be allowed to

10   initiate the letters of request with those international banks

11   now, and then in three months we can come to your Honor and

12   make a motion for an extension of time of discovery and put

13   that forward.

14           But in the event that your Honor feels that we have

15   made that initial showing and we can seek more time to do

16   international bank discovery, we don't want to lose these three

17   months now.  For all we know, Novobanco will respond next month

18   and give us the documents we need, but we don't see why we

19   should have our hands tied and not seek that discovery now.

20           THE COURT:  You're asking to submit letters of request

21   to me for me to consider in terms of international discovery.

22           MR. FERGUSON:  Yes, your Honor.  And then we can come

23   to you in three months and file a motion to extend the time for

24   discovery, and we can put forward to you the documents that we

25   believe demonstrate that's warranted.

1          THE COURT:  Let me hear from plaintiff.

2          MS. KOLATCH:  I would say, rather than coming in three

3  months and ask for an extension, which the Court started off by

4  saying is not the procedure you want, they could do that as

5  part of that.

6          I don't have a problem with not wasting these two,

7  three months, but it still should be in the context of a Rule

8  56(d) in response to summary judgment, and the Court can

9  consider it in that context whether to give them additional

10  time.

11          THE COURT:  That seems right to me.

12          Here is what I am going to do.  With respect to the

13  motion for summary judgment, in lieu of complaint, I am denying

14  that motion for summary judgment.  "Summary judgment is

15  ordinarily disfavored prior to discovery having been

16  conducted."  *Casmento v. Volmar Constr., Inc.*, 2021 WL 1062343,

17  at *3 (S.D.N.Y. Mar. 19, 2021).  "Only in the rarest of cases

18  may summary judgment be granted against a plaintiff who has not

19  been afforded the opportunity to conduct discovery." *Hellstrom

20  v. U.S. Dept of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.

21  2000).

22          In this case the plaintiffs rely upon the declarations

23  of Mr. Kricorian and Ms. Ocando, but neither of those

24  individuals have been deposed yet, and defendants have put in a

25  declaration from a representative who says that defendants

1   don't have the note or note agreement in question and don't

2   have access to anyone who has the note or note agreement.  At

3   least with respect to that limited issue, summary judgment is

4   premature at this stage.

5        I'm also denying the motion to strike with respect to

6   the additional pages on the reply brief.  I excuse defendants'

7   failure to comply with the ten-page limit.  I therefore deny

8   the motion to strike the last two pages of the reply memorandum

9   of law.

10       With respect to the motion to strike the Ocando

11  declaration, that motion is granted.  For what it's worth, the

12  Ocando declaration does go beyond the scope of permissible

13  reply.

14       I am going to direct the parties to prepare a case

15  management plan to be submitted by no later than one week from

16  today.  That would be January 17, 2025.  That would provide for

17  the close of discovery by April 4, 2025 and would permit the

18  plaintiff to make a renewed motion for summary judgment on

19  April 11, 2025.  Within that period of time of discovery,

20  plaintiffs can serve requests for production of documents on

21  defendants and can take the deposition of Mr. Kricorian and

22  Ms. Ocando no longer than three and a half hours for each of

23  them.  You can work out whether those depositions can be done

24  remotely or in person.  Defendants can takes the depositions of

25  Ocando and Kricorian and can serve discovery requests on

1   plaintiff.

2          I suspect that I am going to need to meet with the two

3   of you in short order to manage the scope of discovery.  You

4   can meet and confer with respect to disputes of discovery, but

5   if you look at my individual practices, you'll see that they

6   are intended for those meet and confers to proceed quickly and

7   for the parties, without delay, to bring any disputes to the

8   Court, and we will have a conference in the robing room where

9   I'll go through it all.

10         Is there anything else I need to do from plaintiff's

11  perspective?

12         MS. KOLATCH:  I don't believe so, your Honor.

13         I assume, your Honor, that your ruling is applying to

14  Petroleo as well?

15         THE COURT:  It is, yes.

16         With respect to Petroleo, you are going to be able to

17  make a motion for summary judgment, I suspect, pretty quickly.

18         Did I give you a deadline for summary judgment?

19         MS. KOLATCH:  You did.  You said April 11.

20         THE COURT:  You can move quicker than that once the

21  depositions are done.

22         MS. KOLATCH:  Thank you, your Honor.

23         THE COURT:  Anything else from defendants?

24         MR. FERGUSON:  No, your Honor.

25         THE COURT:  Have a good day, everybody, good weekend.