UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

WEATHERFORD SWITZERLAND TRADING
AND DEVELOPMENT GMBH, solely in its
capacity as Administrative Agent of a certain
indenture dated as of June 28, 2016;
WEATHERFORD LATIN AMERICA, S.C.A.,

Case No: 1:23-cv-10703-LJL

                Plaintiffs,

      v.

PETRÓLEOS DE VENEZUELA, S.A. AND
PDVSA PETRÓLEO, S.A.,

                Defendants.

----------------------------------------------------------------X

**PLAINTIFFS WEATHERFORD LATIN AMERICA, S.C.A. AND WEATHERFORD
SWITZERLAND TRADING AND DEVELOPMENT GMBH'S MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Cohen Tauber Spievack & Wagner P.C.
420 Lexington Avenue, Suite 2400
New York, NY 10170
Tel.: 212-586-5800

*Attorneys for Weatherford Latin America, S.C.A. and Weatherford Switzerland Trading and
Development GmbH*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF RELEVANT FACTS .............................................................................. 2

1.    The Note and Note Agreement ................................................................................ 2

2.    PDVSA made the September and December 2017 Payments Late and in Euro ................... 5

3.    Defendants Defaulted on the Note .......................................................................... 7

PROCEDURAL HISTORY ................................................................................................. 9

ARGUMENT ....................................................................................................................... 9

I.    WEATHERFORD LATIN AMERICA IS ENTITLED TO SUMMARY JUDGMENT ...... 9

    A.    Standard for Summary Judgment ...................................................................... 9

    B.    Weatherford Has Established a Prima Facie Case Against Defendants for Breach of the Note and Note Agreement ...................................................................... 9

II.    DEFENDANTS CANNOT ESTABLISH A DEFENSE BREACH OF CONTRACT ................................................................................................................... 14

    A.    PDVSA is Estopped from Asserting an Impossibility Defense ....................................... 14

    B.    PDVSA Cannot Establish that Payments were Impossible .............................. 17

    C.    The Impossibility Defense Does Not Apply Because the Sanctions Were Foreseeable .. 20

    D.    Petróleo Waived All Defenses to Payment ...................................................... 21

CONCLUSION .................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)........................................................................................................9

*Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.*,
    409 F. 3d 87 (2d Cir. 2005)..........................................................................................17

*CAMOFI Master LDC v. Coll. P'ship, Inc.*,
    452 F. Supp. 2d 462 (S.D.N.Y. 2006)..........................................................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................................................9

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch,
Pierce, Fenner & Smith Inc.*,
    188 F.3d 31 (2d Cir. 1999)............................................................................................21

*Dresser-Rand Co. v. PDVSA Petroleo, S.A.*,
    No. 20-1990, 2021 WL 2878936 (2d Cir. July 9, 2021).............................................22

*Dresser-Rand Co. v. Petroleos de Venezuela, S.A.*,
    574 F. Supp. 3d 217 (S.D.N.Y. 2021)..........................................................14, 15, 16, 17

*Kel Kim Corp. v. Cent. Mkts., Inc.*,
    70 N.Y. 2d 900 (1987)............................................................................................14, 20

*Lang v. Ret. Living Pub. Co.*,
    949 F.2d 576 (2d Cir. 1991)............................................................................................9

*Lovati v. Petroleos de Venezuela, S.A.*,
    No. 1:19-CV-04799 (ALC) (HJR), 2025 WL 951499 (S.D.N.Y. Mar. 28,
    2025) ..............................................................................................................................17

*Miss Jones LLC v. Stiles*,
    No. 17-CV-1450 (NSR), 2020 WL 4704886 (S.D.N.Y. Aug. 13, 2020) ...............12

*Nat'l Union Fire Ins. Co. v. Keenan*,
    No. 93 Civ. 6784 (LLS), 2005 WL 736233 (S.D.N.Y. Mar. 31, 2005)..................10

*PDVSA v. MUFG Union Bank, N.A.*,
    495 F. Supp. 3d 257 (S.D.N.Y. 2020)..........................................................................20

*Penberg v. HealthBridge Mgmt.*,
    823 F. Supp. 2d 166 (E.D.N.Y. 2011) .........................................................................14

*Purdy v. Zeldes*,
    337 F.3d 253 (2d Cir. 2003).......................................................................................15

*Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*,
    82 F.4th 161 (2d Cir. 2023) ................................................................................ *passim*

*Red Tree Invs., LLC v. Petróleo*,
    No. 19-CV-2519 (PKC), 2021 WL 6092462,  (S.D.N.Y. Dec. 22, 2021), *aff'd*,
    82 F.4th 161 (2d Cir. 2023) .......................................................................................15

*Tabatznik v. Turner*,
    No. 14-cv-8135 (JFK), 2016 WL 1267792 (S.D.N.Y. Mar. 30, 2016) ...................................9

*UMB Bank N.A. v. Bluestone Coke, LLC*,
    No. 20-cv-2043, 2020 WL 6712307 (S.D.N.Y. 2020) (Liman, J.)..........................................10

*United States v. Figueroa*,
    No. 7:23-CR-161 (MAD), 2023 WL 8373566 (S.D.N.Y. Dec. 4, 2023) ...............................13

*Valley Nat'l Bank v. Oxygen Unlimited*,
    No 10 Civ. 5815 (GBD), 2010 WL 5422508 ...........................................................................10

*World of Boxing LLC v. King*,
    56 F. Supp. 3d 507 (S.D.N.Y. 2014).........................................................................20

*Wyly v. Weiss*,
    697 F.3d 131 (2d Cir. 2012)........................................................................................15

**Other Authorities**

80 Fed. Reg. 12,747 (Mar. 8, 2015).................................................................................21

82 Fed. Reg. 41, 155 (Aug. 24, 2017)...............................................................................1

CPLR 3213.............................................................................................................................9

Plaintiffs Weatherford Latin America, S.C.A. ("Weatherford Latin America") and Weatherford Switzerland Trading and Development GmbH ("Weatherford GmbH")(collectively "Weatherford") submit this memorandum of law in support of their motion pursuant to Rule 56 of the Federal Rule of Civil Procedure for summary judgment against defendants Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("Petróleo") (together, with PDVSA, "Defendants") (the "Motion").

## PRELIMINARY STATEMENT

This action arises out of Defendants' failure to pay the outstanding principal amount of $90,000,006.74, plus accrued interest outstanding and overdue on a promissory note issued on June 28, 2016.  Defendants have been in default of their obligations on the note since April 2018 and have no legitimate defense to their breach.  There is no dispute that the amount remains unpaid.  Instead, Defendants speculate that U.S. sanctions imposed on Venezuela may have rendered it impossible for PDVSA to make payments on the Note because banks would not process PDVSA's payments.  Defendants are wrong.  On August 25, 2017, Executive Order 13808 prohibited U.S. persons from dealing in "new debt" issued by PDVSA *after* August 25, 2017, absent a license from the Office of Foreign Asset Control ("OFAC").  82 Fed. Reg. 41, 155 (Aug. 24, 2017).   But E.O. 13808 did not bar PDVSA from making payments on the Note, which was debt issued *before* August 25, 2017.

Not only is there no evidence to support PDVSA's heavy burden to show that somehow it was impossible for it to continue making payments on the Note, but the undisputed evidence is to the contrary.  PDVSA itself proved that payments were possible by making payments on this and other debt after sanctions were imposed on PDVSA.  In fact, to facilitate payment, Weatherford agreed to accept payment in currency other than U.S. dollar and PDVSA successfully made

payments to Weatherford on the Note -- in excess of the equivalent of $30 million -- in euros. PDVSA's successful payments to Weatherford in euro to avoid any difficulties created by the sanctions, dooms its impossibility defense.

Similarly, PDVSA's affiliates, subsidiaries and joint ventures, which were also subject to the sanctions, made payments to Weatherford Latin America after the sanctions were imposed. PDVSA also continued to pay down debt secured by its interest in CITGO (the "PDVSA 2020 Bonds"), making multiple payments in 2017, 2018 and 2019 after E.O. 13808 was issued.  There is thus no genuine issue of material fact.  PDVSA could have, but failed to, to make payments on the Note. Accordingly, the Court should grant Plaintiffs' motion for summary judgment.

STATEMENT OF RELEVANT FACTS

### 1.    The Note and Note Agreement

Weatherford is party to a Note Agreement, dated June 28, 2016, with PDVSA and its subsidiary Petróleo, by which PDVSA agreed to issue debt in a principal amount of US $120,000,009 in the form of a Senior Guaranteed Note, Series 2016D (the "Note"), to Plaintiff Weatherford Latin America.  (Declaration of Ysaura Ocando, dated April 25, "Ocando Decl." ¶¶ 6-10;  Exs[1]. 1 and 2.)  Petróleo guaranteed PDVSA's payment obligations under the Note Agreement, and Weatherford GmbH agreed to act as Administrative Agent for the transaction. (Ex. 1, Article VI.)

The Note Agreement contains the relevant terms by which the parties agreed to be governed for the issuance and repayment of the principal amount, including, *inter alia*, PDVSA's payment obligations for the principal, interest, and default interest of any and all

---

[1] "Ex. __" refers to the exhibits attached to the Declaration of Sari E. Kolatch, dated April 25, 2025  ("Kolatch Decl.")

promissory notes issued pursuant to the Note Agreement.   Section 2.02 provides that PDVSA "hereby unconditionally promises to pay each Noteholder the principal amount of the Note . . "   Section 2.03 provides that "Notes shall bear interest on the unpaid principal balance … at a rate per annum equal to [6.5%]" and that such interest would be "payable on the Repayment Dates (including the Maturity Date), or at maturity by acceleration, and after such maturity, on demand." Section 2.04 set a default interest rate for issued notes at 8.5% per annum.  (Ex. 1, Article II.)

Pursuant to the Note Agreement, on June 28, 2016, Defendant PDVSA issued the Note to Weatherford Latin America in a principal amount of US $120,000,009.   In the Note, PDVSA:

> promise[d] to pay to Weatherford Latin America, S.C.A    the principal sum of ONE HUNDRED TWENTY MILLION NINE DOLLARS ($120,000,009), with interest … on the unpaid principal balance thereof … at a rate per annum equal to six and one-half percent (6.50%), payable quarterly, on September 28, 2016 … and on each day in March, June, September and December described on Exhibit A hereto . . . .

Exhibit A to the Note establishes the dates when PDVSA's payments were due:

| Repayment Date | Principal Amount Due | Interest Due |
|---|---|---|
| September 28, 2016 | $0.00 | $1,966,027.54 |
| December 28, 2016 | $0.00 | $1,944,657.68 |
| March 28, 2017 | $0.00 | $1,923,287.82 |
| June 28, 2017 | $0.00 | $1,966,027.54 |
| September 28, 2017 | $15,000,001.13 | $1,966,027.54 |
| December 28, 2017 | $15,000,001.13 | $1,701,575.47 |
| March 28, 2018 | $15,000,001.13 | $1,442,465.86 |
| June 28, 2018 | $15,000,001.13 | $1,228,767.22 |
| September 28, 2018 | $15,000,001.13 | $983,013.77 |
| December 28, 2018 | $15,000,001.13 | $729,246.63 |
| March 28, 2019 | $15,000,001.13 | $480,821.95 |
| June 28, 2019 | $15,000,001.09 | $245,753.44 |

(Ex. 1, Exhibit A.)

3

Ift PDVSA failed to make timely payment of any installment, PDVSA agreed in the Note and Note Agreement that overdue payments would accrue interest at a rate of 8.5% per annum until PDVSA satisfied its payment obligations.  (Ex. 2 at p. 1; Ex. 1 at § 2.04.)

The Note Agreement also set forth additional consequences for PDVSA defaulting on its payment obligations.  Article VII of the Note Agreement specifies that if PDVSA failed to make a scheduled payment of principal or interest on the Note, and that failure to pay continued for a period of ten days after written notice, then Weatherford Latin American and Weatherford GmbH would each have the power to demand accelerated and immediate payment in full of all principal and interest owed and accruing under the Note. It states:

> at any time thereafter during the continuance of such event [of default], [Weatherford Latin America] may, or [Weatherford GmbH] at the request of [Weatherford Latin America] shall . . . declare the Notes then outstanding to be forthwith due and payable in whole or in part, whereupon the principal of the Notes so declared to be due and payable, together with accrued interest thereon and any unpaid accrued fees and all other liabilities of [PDVSA] accrued hereunder and under any other Finance Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by [PDVSA] . . . .

(Ex. 1, Article VII (l).)

Section 9.05 of the Note Agreement further provides that PDVSA would "pay all out-of-pocket expenses incurred by [Weatherford GmbH] or any Noteholder in connection with the enforcement or protection of its rights in connection with this [Note Agreement] . . . or in connection with the Notes issued hereunder, and, in connection with any such enforcement or protection, the fees, charges and disbursements of any counsel for [Weatherford GmbH] or any Noteholder."  (Ex. 1 § 9.05.)

Thus, the Note Agreement and the Note set out the payment schedule to which PDVSA agreed to adhere, and the consequences of failure to make timely payment.

The Note Agreement also sets out Petróleo's obligations to guarantee PDVSA's financial obligations. In Section 6.01 of the Note Agreement, Petróleo, as guarantor of PDVSA's payment obligations, agreed to be

> jointly and severally liable for, and, as primary obligor and not merely as surety, absolutely, irrevocably and unconditionally guarantees . . . the prompt payment when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter, of the Obligations and all costs and expenses including all court costs and attorneys' and paralegals' fees (including allocated costs of in-house counsel and paralegals) . . . and expenses paid or incurred by [Plaintiffs] in endeavoring to collect all or any part of the Obligations.

(Ex. 1 § 6.01.)

Section 9.07 of the Note Agreement provides that New York law applies to the rights and obligations of the parties and that it shall be governed, construed and enforced in accordance with New York law. (Ex. 1§ 9.07)

### 2. PDVSA made the September and December 2017 Payments Late and in Euro

Defendants made timely payments of the first four payments on the Note, which were all interest payments. (Ocando Decl. ¶ 13.) The fifth payment, in the amount of $16,966,028.8, consisting of a principal payment in the amount of $15,000,001.3 and interest in the amount of $1,966,027.54, was due on September 28, 2017. (Ex. 2 at p.1) PDVSA failed to make this payment was it was due. (Ocando Decl. ¶ 14.)

Joshua Silverman, Assistant Treasurer of all the Weatherford companies was responsible, at the corporate level, for overseeing PDVSA's compliance with the Note. (Ocando Decl. ¶ 12.)

Among other things, this included tracking payments, coordinating with Weatherford GmbH, as Administrative Agent, and communicating with PDVSA about the Note. (*Id*.)

On October 3, 2017, Silverman emailed PDVSA a Notice of Default. (Ocando Decl. ¶ 15; Ex. 3.) Over the next two months Silverman corresponded with PDVSA about the outstanding September 28, 2017 payment. (Ocando Decl. ¶ 16.) Later than month, PDVSA informed Weatherford that it used China CITIC Bank to process the payment, but that China CITIC's intermediary bank, Deutsche Bank, rejected the payment due to its internal policies. PDVSA reprocessed the payment again through the same bank and it was rejected again. (*Id*.; Ex. 4, 5 (English translation).)

On November 8, 2017, Mr. Silverman emailed PDVSA a Notice of Acceleration. (Ocando Decl. ¶ 17; Ex. 6.) On November 15, 2017, PDVSA proposed to pay the missed payment in the amount of $16,966.028.67, together with the accrued interest at the default rate, on or before December 10, provided Weatherford agrees to rescind the acceleration notice. (Ocando Decl. ¶ 18; Ex. 7.)

On November 16, 2017, Weatherford responded to PDVSA's letter and agreed to rescind the acceleration if payment is made by December 10, 2017. (Ocando Decl. ¶ 19; Ex. 8). Weatherford also provided PDVSA a list of alternative ways for PDVSA make payments on the Note. These included:

> Option 1:  Payment in USD from PDVSA's account at Gazprom bank to Weatherford's JP Morgan account in New York. And requesting one business day notice so Weatherford can inform its bank to expect payment.

> Option 2: Payment in USD using the PDVSA account at CITIC Bank of China to Weatherford's JP Morgan account in NY and requesting two business day notice so Weatherford can inform Deutche Bank in an effort get approval of its compliance department.

Option 3:  Payment in EUROS to Weatherford's JP Morgan account in Frankfurt and requesting one business day notice.

Option 4:  Payment in Hong Kong Dollars from PDVSA's CITIC Bank account in China into an account that Weatherford was in the process of opening at Madison Pacific.

(Exs. 8, 9 (English translation).)

On December 8, 2017, PDVSA sent Silverman an email asking if Weatherford would accept payment in euro.  Silverman responded that it would and provided a bank letter from JP Morgan with wire payment instructions. (Ocando Decl. ¶ 20; Ex. 10.)  That same day PDVSA confirmed that the payment would be made through Novo Banco and provided the euro amount and exchange rate to USD.  (Ocando Decl. ¶ 21; Ex. 11.)  On December 19, 2017, Weatherford confirmed receipt of the payment. (*Id*.)

The next payment was due on December 28, 2017.  PDVSA eventually made this payment on January 18, 2018, in euro, through Novo Banco to Weatherford's account at JP Morgan Bank. (Ocando Decl. 23, Ex. 12.)

### 3.    Defendants Defaulted on the Note

PDVSA promised  to pay its seventh quarterly installment on March 28, 2018 in the amount of $15,000,001.13 in principal and $1,966,027.54 in interest.  (Ex. 2 at p.2.) PDVSA failed to make that payment.  (Ocando Decl. ¶ 25,26.)

On April 3, 2018, Weatherford sent a notice of default notifying PDVSA that it had failed to make timely payment as required by the Note Agreement (the "Notice of Default." ( Ocando  Decl. ¶ 26; Ex. 14. )  The Notice of Default declared that PDVSA's "failure to timely pay USD $16,442,466.99, representing $15,00,000,001.13 of principal and $1,442,465.86 of interest, in connection with the Note Agreement constitute[s] an Event of Default." (*Id*.)  Weatherford further notified PDVSA that if payment was not made within

the ten (10) day period specified in the Note Agreement, that Weatherford H would declare the outstanding Notes to be immediately due and payable, together with all accrued interest thereon. (*Id*.) PDVSA did not respond to Default Notice and did not cure the default. (Ocando Decl. ¶ 27.)

On April 16, 2018, Weatherford notified PDVSA that it was declaring the unpaid principal amount of the loan, together with all accrued interest, including default interest, "to be immediately due and payable" (the "Acceleration Notice"). (Ocando Decl. ¶ 28; Ex. 15.) In addition, the Acceleration Notice stated that, pursuant to Section 2.04 of the Note Agreement, "all amounts that are due and owing pursuant to this notice that remain unpaid shall continue to accrue interest at the default interest rate of 8.50% per annum." (*Id*.)

Defendants failed to make any further payments on the Note despite Weatherford's repeated requests. (Ocando Decl. ¶ ¶ 30, 31; Ex. 16.)

During this same period, Weatherford Latin America received payment from other PDVSA entities, including Petroleos and PDVSA joint ventures, that also were subject to the U.S. Sanctions, for goods and services that it continued to provide after August 2017. (Ocando Decl. ¶¶ 36-37, 41-45; Exs. 20; 22; 24; 26 (English translations at Exs. 21, 23, 25, and 27.)

Accordingly, Weatherford is entitled to a judgment on the Note for the unpaid principal and interest, including interest at the default rate from the date of PDVSA's default as well as post judgment interest in the amount of 8.5% on the entire judgment amount until payment is made. Weatherford is also entitled to its fees, costs and expenses incurred in enforcing the Note and Note Agreement. (See Ex. 1 § 9.05.)

8

**PROCEDURAL HISTORY**

Weatherford commenced this action on November 1, 2023 by filing a CPLR 3213 motion for summary judgment in lieu of complaint in New York State Supreme Court. Defendants removed the action to federal court on December 7, 2023. (Dkt. No. 1.) After removal, Weatherford's motion was converted to a motion for summary judgment under Fed. R. Civ. P. 56. See *Tabatznik v. Turner*, No. 14-cv-8135 (JFK), 2016 WL 1267792 at *4 n.2 (S.D.N.Y. Mar. 30, 2016). Defendants filed an opposition to the summary judgment and, also moved for relief pursuant to Rule 56 (d). (Dkt. No. 12.) On January 10, 2015, the Court denied Weatherford's motion for summary judgment and provided Defendants with an opportunity to take discovery. In accordance with the Scheduling Order, discovery was completed by April 4, 2025. (Dkt. No. 34; Kolatch Decl. ¶ 33.)

**ARGUMENT**

## I.    WEATHERFORD LATIN AMERICA IS ENTITLED TO SUMMARY JUDGMENT

### A.    Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted when the moving party "shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); *see also, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir. 1991).

### B.    Weatherford Has Established a Prima Facie Case Against Defendants for Breach of the Note and Note Agreement

New York law governs Defendants' obligations under the Note and Note Agreement. (Ex. 1 at § 9.07] Ex. 2 at 2.) Under New York law, a *prima facie* case for recovery on a

promissory note requires showing (1) proof of a valid note and (2) failure to make payment. *CAMOFI Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 470 (S.D.N.Y. 2006)("A promissory note stands on its own and establishes the plaintiff's right to payment"); *Valley Nat'l Bank v. Oxygen Unlimited*, No 10 Civ. 5815 (GBD), 2010 WL 5422508, at • 3 (S.D.N.Y. Dec. 23, 2010)("To succeed on a motion for summary judgment, a plaintiff suing on a promissory note need to merely establish the absence of a genuine issue as to the execution and default.")(quotations omitted).  To recover on a guaranty, the plaintiff must come forward with evidence of "the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty...."  *UMB Bank N.A. v. Bluestone Coke, LLC*, No. 20-cv-2043, 2020 WL 6712307 at *4 (S.D.N.Y. 2020) (Liman, J.).

Where a noteholder has established a *prima facie* case, the burden shifts to the defendant to prove "the existence of a triable issue of fact in the form of a bona fide defense against the note." *Nat'l Union Fire Ins. Co. v. Keenan*, No. 93 Civ. 6784 (LLS), 2005 WL 736233, at *1 (S.D.N.Y. Mar. 31, 2005) (quotations omitted). "A stringent standard applies to evaluating a defense to a negotiable instrument among sophisticated business people." *CAMOFI*, 452 F. Supp. 2d at 471 (quotation omitted).  To establish a *bona fide* defense, a defendant "may not rely on conclusory allegations, but instead must show by admissible evidence a genuine and substantial issue rebutting [creditor's] entitlement to payment." *Id.* (quotations omitted).

It is undisputed Defendants defaulted on the Note by failing to make contractually mandated principal and interest payments.  (See Ocando Decl. ¶¶ 26-35, Exs. 14-18.);  Accordingly, Weatherford Latin America is entitled to summary judgment for the outstanding principal and interest on the Note, plus interest at the default rate running from the date of the default through payment, including after judgment.  *See Red Tree Invs., LLC v. Petroleos de*

*Venezuela, S.A.*, 82 F.4th 161, 176-177 (2d Cir. 2023)(relying on identical language to Section 2.04 of the Note Agreement which provides that, in the event of PDVSA's default, "all amounts outstanding under this Agreement ... shall bear interest (after as well as before judgment) ... at a rate per annum equal to eight and one-half percent" and finding that "the outstanding principal and interest that accrued pre-judgment—including both default and ordinary interest—are subject to default interest post-judgment."); *See* (Ex. 1 at § 2.04.)

Weatherford has met its burden to establish a *prima facie* case through the testimony of Ysaura Ocando, who has first-hand knowledge of PDVSA's issuance of the Note and its failure to make payments beginning with the March 28, 2018, payment. On April 3, 2018, Weatherford provided PDVSA written Notice of Default, and on April 16, 2018, Weatherford sent PDVSA written Notice of Acceleration. (Ocando Decl. ¶¶ 26-29, Exs. 14,15.) PDVSA did not make any further payments on the Note. (Ocando Decl. ¶ 24, 35.) Petróleo as guarantor did not make any payments on the Note.

As the orders to cash ("OTC") manager at Weatherford Latin America during the relevant time period, it was Ocando's responsibility to oversee the payments on the Note on behalf of Weatherford Latin America and to make sure that both payments and outstanding payments were accurately reflected on Weatherford Latin America's records. (Ocando Decl. ¶ 11.) Ocando was notified when PDVSA made payments and had access to Weatherford Latin America's bank account where payments were ultimately transferred. (*Id*.) Ocando also was notified of the status of pending payments and outstanding payments and was included on all email correspondence between Silverman and PDVSA about the Note. (*Id*.)

Ocando confirmed that the payments due in September and December 2017,

consisting of principal and interest payments, were paid late by PDVSA and paid in euro, rather that U.S. dollar.  Ocando received email correspondence from PDVSA regarding these payments, including, without limitation, emails confirming that payments had been through Nova Banco in euro. (Ocando Decl. ¶¶ 16-23; Exs. 10-12.)

Ocando also confirmed that PDVSA did not make any further payments on the Note after the December 28, 2017 payment (that was paid in January 2018).  (Ocando Decl. ¶¶ 24, 35.)

Ocando's testimony is sufficient to establish a prima facie case.  In addition, Silverman's email correspondence with PDVSA regarding the Note, which documented both PDVSA's payments and failure to make payments, constitute business records and are separately admissible to establish PDVSA's breach of the Note and Note Agreement.  The Second Circuit has adopted "a generous view" of the business records exception, emphasizing that "Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all." *Miss Jones LLC v. Stiles*, No. 17-CV-1450 (NSR), 2020 WL 4704886, at *1 (S.D.N.Y. Aug. 13, 2020) (internal citation omitted).)

Silverman, then Assistant Treasurer of all the Weatherford companies, was responsible for overseeing PDVSA's compliance with the Note, tracking payments and communicating with PDVSA about the Note. (Ocando Decl. ¶ 12.)  Weatherford often enters into payment agreements, including promissory notes, with its customers with respect to outstanding receivables.  (Declaration of Max Kricorian, dated April 23, 2025 ("Kricorian Decl." ¶ 7.)  Where the amount is material, such as the $120 million Note from PDVSA, overall responsibility for overseeing compliance with the terms of the debt instrument is handled at the corporate level out of the Weatherford companies' Treasurer's office. (Kricorian Decl. ¶¶7,8.)

12

Silverman's method of communication with PDVSA about the Note was email and notices were sent to PDVSA, among other means, via email.  The Note Agreement expressly provides for "Notices and other communications" to be in writing and sent by email.  (Ex. 1 § 9.01.)

In accordance with Weatherford's regular practice and policy, all of Silverman's emails are preserved and have continued to be preserved even after he left the company in 2021. (Kricorian Decl. ¶ 9.)  Silverman's emails are made available to appropriate Weatherford personnel upon request. (*Id.*)  Thus, even if Ocando was not available (and she is), Silverman's emails are admissible as business records because it was Silverman's business duty as part of this responsibilities with respect to the Note to send these emails and notices to PDVSA and these documents were maintained by Weatherford as part of its corporate policies and practices.

Ocando was a recipient and received Silverman's correspondences with PDVSA at the time they were sent and was responsible for tracking and recording payments on the Note on behalf of Weatherford Latin America.  But additionally, employees may lay a proper foundation for emails that predated their employment or that were prepared or sent by others. See *United States v. Figueroa*, No. 7:23-CR-161 (MAD), 2023 WL 8373566, at *3 (S.D.N.Y. Dec. 4, 2023)(finding emails sent between an attorney and his prior assistant were admissible as business records through a foundation laid by an employee with respect to emails that predated her employment. "Were it otherwise, business records would continuously be rendered inadmissible whenever a custodian retired or changed jobs and that is flatly inconsistent with the Second Circuit's 'generous view' of Rule 803(6) (cleaned up).

Courts examine whether it was the business duty of an employee to make and maintain emails as part of his job duties and whether the employee routinely sent or received and maintained the emails.  See *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 187–89

13

(E.D.N.Y. 2011)(internal citations omitted) (finding that an email was a business record because it was the regular business practice of the entity to share the type of information contained in the email and the duty of the person to email clients with information such as that included in the email.)  It was Silverman's business duty as Assistant Treasurer to correspond with PDVSA about the Note.  The email correspondence with PDVSA was prepared in the course of Weatherford's business activity of collecting outstanding payments due to Weatherford, and it is Weatherford's regular practice to keep Silverman's emails.

## II.    DEFENDANTS CANNOT ESTABLISH A DEFENSE TO BREACH OF CONTRACT

PDVSA has speculated that it may have the defense of impossibility to the claim against it. (Dkt. No. 13 (Declaration of Horatio Medina) ¶ 34.)  As the party seeking to assert the impossibility defense, PDVSA "has the burden to prove that its performance was objectively impossible" and "must demonstrate that it took virtually every action within its power to perform its duties under the contract."  *Dresser-Rand Co. v. Petroleos de Venezuela,* S.A., 574 F. Supp. 3d 217, 223 (S.D.N.Y. 2021), aff'd sub nom. *Siemens Energy, Inc. v. Petroleos de Venezuela, S.A*., 82 F.4th 144 (2d Cir. 2023)(cleaned up)(finding that the evidence at trial failed to establish that payment was impossible and "on the contrary, it tends to show that payment was probably feasible.").   The impossibility defense is applied very narrowly under New York law.  *Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y. 2d 900, 902 (1987).

### A.    PDVSA is Estopped from Asserting an Impossibility Defense

To the extent PDVSA intends to claim here that it was "impossible" for it to make payments to Weatherford on the Note because of the U.S. sanctions, it is collaterally estopped from doing so.  The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior

proceeding. *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003).  Collateral estoppel applies

when the following factors are met: "(1) the identical issue was raised in a previous proceeding;

(2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a

full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to

support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir.

2012) (internal citations omitted).

Each of these factors are met here.  This is the third time PDVSA has attempted to use

the "impossibility" defense on a case involving a breach of a private note and note agreement,

such as the Note and Note Agreement here.  The issue of whether it was "impossible" for banks

to process PDVSA's payments after E.O. 13808 was issued in August 2017, was fully litigated

and decided in two prior actions including *Dresser-Rand,* which was decided after trial, and *Red

Tree Invs., LLC v. Petróleo s de Venezuela*, S.A., No. 19-CV-2519 (PKC), 2021 WL 6092462,

(S.D.N.Y. Dec. 22, 2021), aff'd, 82 F.4th 161 (2d Cir. 2023), which was decided on summary

judgment.

In *Dresser-Rand,* PDVSA issued a promissory note to plaintiff in the amount of

approximately $120 million in January 2017[2].  *Dresser-Rand Co*., 574 F. Supp. at 219.  PDVSA

defaulted in October 2017 after making the first two quarterly interest payments on the Note.

(*Id.*)  PDVSA argued that it attempted to send Dresser-Rand payments through its account at

Citibank but that the bank refused to process the payments because of its own internal policies.

Judge Stanton found that PDVSA "falls far short" of demonstrating that it took "every action

---

[2] The note agreements in *Dresser Rand* and *Red Tree* are virtually identical to the ones here.
While the amounts and novated receivables vary, the general provisions of those note agreements
are the same as the Note Agreement here.  A copy of the note agreement from the *Dresser Rand*
action is attached to the Kolatch Declaration at Ex. 29, A copy of the note agreements from the
*Red Tree* action is attached to the Kolatch Declaration at Exs. 30, 31.)

within its powers to perform its duties" under the note. *Id*. at 225-226. The Court pointed out that three other banks (China CITIC Bank, Dinosaur Merchants Bank Limited (DMBL) and JP Morgan Chase) processed the third interest payment in February 2018. *Id*. at 226. The Court found that Commerzbank and Novo Bank "also could likely have processed the payment if PDVSA had pursued the options." *Id*. Novo Bank had told Dresser Rand's parent organization that "there are not grounds for rejection of transactions to and from Venezuela during the relevant period" and both Dresser Rand's and PDVSA's expert witnesses "concluded that nothing within Commerzbank's internal risk-adverse policies indicated that PDVSA's payment would not have been processed." (*Id*. at 226 (citing Commerzbank's "business policy restrictions for Venezuela" which prohibit transactions "indications for a connection to the financial system or jurisdiction of the United States" only to PDVSA and not from PDVSA.")

In *Red Tree*, Judge Castel granted summary judgment in favor of plaintiff, finding that there was insufficient and contrary evidence that payment was impossible. PDVSA asserted the impossibility defense based on two instances in which Deutsche Bank, as an intermediary bank, declined to process payments. *Red Tree*, 2021 WL 6092462 at *5. But Deutsche Bank agreed to process and did process a subsequent payment which, as Judge Castel found "demonstrates that Deutsche Bank was persuaded that it was lawful to transfer the funds and did so" therefore "payments were not impossible." *Id*. PDVSA presented an affidavit from the CEO of Zuma Bank who testified that the bank declined to process payments by PDVSA due to risks related to U.S. sanctions, but the affidavit also showed that Zuma Bank successfully processed two payments from PDVSA after the E.O. 13808 was issued, including on September 25, 2017 and March 12, 2018. *Id*. Judge Castel found that "no reasonable jury could find in defendants' favor on their impossibility defense." *Id*.

In addition to considering the four collateral estoppel factors, a court must determine that the application of the doctrine would be "fair."  See *Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc*., 409 F. 3d 87, 91 (2d Cir. 2005).  Here, the application of collateral estoppel is fair given PDVSA's full opportunity to litigate the issue of impossibility in cases involving a private note and note agreement with the same provisions as the Note and Note Agreement here, with failure to make payments during the same time period, on the claim of impossibility due to the same sanctions.  And, as in *Red Tree* and *Dresser Rand*, Weatherford was both the Note holder and Administrative Agent, therefore, it was free to allow alternate means of payment such as payment in euro (or any other foreign currency) rather than U.S. dollar.[3]

## B.    PDVSA Cannot Establish that Payments were Impossible

Even if it is not estopped from the raising the impossibility defense, there is no genuine dispute with respect to impossibility of payment.  Executive Order 13808 was issued on August

---

[3] In *Lovati v. Petroleos de Venezuela, S.A*., No. 1:19-CV-04799 (ALC) (HJR), 2025 WL 951499, (S.D.N.Y. Mar. 28, 2025), which involved PDVSA's default on various series of bonds issued pursuant to indentures, Judge Carter recently declined to find that collateral estoppel applied based on *Red Tree* and *Dresser-Rand* because the "types of notes and lender were different from those in this case."  *Id*. at *6.  But the types of notes and lender in *Red Tree* and *Dresser-Rand* are the same as in *this* case.  In fact, in *Lovati*, PDVSA specifically argued that *Red Tree* and *Dresser-Rand* are factually distinguishable from the bonds in that case because they involved private note agreements where the initial noteholder also acted as administrative agent.  (*See* Case No. 1;19-cv-04799 at D.E. 137 at n. 13.)  The same is true here.

The *Lovati* Court also noted that the facts in *Red Tree* and *Dresser Rand* differed because in those cases the PDVSA failed to pursue all options for payments the courts found that PDVSA could have contacted alternative banks to make payments or provide additional assurance to make the payments.  *Lovati*, 2025 WL 951499 at * 6.  Again, the same is true here.  Novo Banco did in fact process two payments to Weatherford after the sanctions were in effect and there is no evidence that Novo Banco was unwilling to process additional payments.  Weatherford repeatedly proposed to PDVSA that it should make payments through Gazprom bank and there is no evidence that such payment was attempted.  Most importantly, PDVSA and its subsidiaries and joint ventures, were able to make payment to Weatherford through various banks.

25, 2017. PDVSA made two payments to Weatherford on the Note *after* the sanctions were imposed. The payments made in December 2017 and January 2018 were made in euro, rather than U.S. dollar, and through Novo Banco. (Ocando Decl. ¶¶ 21, 23, Exs. 11,12.)  Thus, it was clearly "possible" for PDVSA to make payments after the sanctions were imposed because it did so. As the Administrative Agent Weatherford was free to make necessary adjustments to the payment methods, including accepting payments in currency other than U.S. dollar. It is incontrovertible that Weatherford did so.

Indeed, PDVSA strategy for making payments to its vendors and creditors after the imposition of the sanctions was to make payments in currency other than U.S. dollar. (Ocando Decl. ¶ 40.)  One of the PDVSA joint ventures (Petromiranda) informed Weatherford via letter that the sanctions "has made it difficult to make payments in US dollars" and indicated that it must pay U.S. dollars receivables in euro. The letter further requests that "if you do not have a bank account in that currency, we respectfully request that you open one in euros as soon as possible, preferably at a banking institution not affiliated with the North American Banking System." (Exs. 20, 21 (English translation).)

PDVSA Petromiranda followed up with a presentation where Weatherford was informed that "[o]n September 7 the President of the Republic announced the implementation of a new international payment system that will use a basket of currencies other than the US dollar to overcome the financial sanctions imposed on the Republic by said country." (Ocando Decl. ¶ 42, Exs. 22, 23 (English translation.) PDVSA and the Republic's strategy involved requesting that its suppliers and contractors open a bank account in euro and agree to accept payment in euro "for the debt generated in U.S. dollars for goods and/or services received." (*Id*.)

That is exactly what happened with respect to the Note.  PDVSA requested to make payment in euro instead of U.S. dollars, and Weatherford agreed and provided PDVSA with its bank account information where it could accept payment in euro.  (Ocando Decl. ¶ 20, Ex. 10.)

There is no evidence that *any* bank refused to process payment in euro.  Moreover, Weatherford notified many of the banks used by both PDVSA and Weatherford of guidance it received from its compliance counsel, Latham and Watkins LP, that PDVSA's payments to Weatherford under the Promissory Note entered into on June 28, 2016, "are fully permissible under U.S. Sanctions."  (Ocando Decl. ¶ 38; Ex. 19.)  None of these banks informed Weatherford that they would nevertheless refuse to process payment because of some internal policy.  (Ocando Decl. ¶ 39.)   And of course, to the extent it was purportedly having difficulty making payments on the Note, PDVSA also could have hired U.S. compliance counsel to assure the banks that payment was legal.  *See Red Tree Invs.,* 2021 WL 6092462, at *6 (noting that PDVSA "has come forward with no evidence of the way in which it endeavored to assure financial institutions the processing its payment was lawful.  For example, it has not shown that it sought to obtain an opinion from the reputable counsel in the United States that payment would not violate the sanctions.")

When PDVSA wanted to make payment, it found a way to do so.  Not only was it able to process two payments to Weatherford in euro after the sanctions were in place, but other PDVSA entities, including Petróleo and PDVSA joint ventures, continued to make payments to Weatherford Latin America on outstanding invoices.  (See Ocando Decl. ¶ 40, 43-45, Exs. 24 - 27.)[4]

---

[4] These payments also dispel the speculation previously offered by PDVSA that perhaps banks refused to process payments on the Note because the ultimate beneficiary was Weatherford Latin America in Venezuela (even though the payments were made to Weatherford GmbH at a bank

19

PDVSA also managed to make payments on certain 2020 secured bonds after the sanctions were issued.  In *PDVSA v. MUFG Union Bank, N.A.*, 495 F. Supp. 3d 257, 260-61 (S.D.N.Y. 2020), Judge Failla made a specific finding that such notes, which were 8.5% notes due in 2020, continued to be paid in the latter part of 2017, all of 2018, and the early part of 2019 before PDVSA ceased making payments due to its view that the payments were unconstitutional under Venezuela law.[5]

### C.    The Impossibility Defense Does Not Apply Because the Sanctions Were Foreseeable

To justify an impossibility defense, "[a] supervening event must have been 'unanticipated.'"  *World of Boxing LLC v. King*, 56 F. Supp. 3d 507, 512 n.33 (S.D.N.Y. 2014); see *Kel Kim Corp.*, 70 N.Y.2d at 902 (impossibility is no defense if the event preventing performance could have been "guarded against in the contract").  The burden is on PDVSA, and not Weatherford, to establish that the sanctions were unforeseeable.  Defendants' failure to carry their burden on this element also dooms their impossibility defense.

At the time the parties entered into the Note Agreement, Executive Order 13692, to block assets of certain Venezuelans, had already been issued.  80 Fed. Reg. 12,747 (Mar. 8, 2015).  In *Red Tree*, Judge Castel granted summary judgment, finding, *inter alia*, that the expansion of sanctions was foreseeable and that Defendants "could have guarded against the contingency of expansion of sanctions but did not."  *Red Tree Invs.*, 2021 WL 6092462, at * 6.  Instead, the note

---

outside of Venezuela and Weatherford Latin America was not subject to any sanctions). Weatherford Latin America routinely received payments during this same time, including from PDVSA entities.

[5] While the decision was ultimately vacated as a result of a decision by the New York Court of Appeals regarding the applicability of Venezuelan law, the fact remains that PDVSA chose to make payments in full on these notes through the beginning of 2019 – during the same time period that it was obligated to make payments to Weatherford on the Note.

agreement in *Red Tree* – and here – provides that PDVSA will maintain all government "approvals" and "licenses" necessary for it to make the required payments.  (*Id.*) (quoting § 5.03 of note agreement).  Section 5.03 of the Note Agreement contains the identical language as the note agreement in *Red Tree*.  (Compare Ex. 1, § 5.03 with Exs. 30 and 31 at § 5.03.)

Given that the U.S. was imposing sanctions on Venezuela before Defendant – Venezuela's state-owned oil company – issued the Note, no reasonable factfinder could conclude that sanctions were unforeseeable.  Because PDVSA cannot show that the events they complain of were unforeseeable, those events cannot excuse their failure to perform their obligations.

### D.    Petróleo Waived All Defenses to Payment

Petróleo "agree[d] that it is jointly and severally liable for" and "unconditionally guarantee[d]" "prompt payment" of the debt.  (Ex. 1 §§6.01.)  Petróleo "waive[d] any defense based on or arising out of any defense of the Issuer or the Guarantor . . . other than the indefeasible payment in full."  (*Id.* § 6.04.)  A party's waiver of all defenses bars *any* defense, including defenses not mentioned in the contract.  *See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 35 (2d Cir. 1999)(finding that unconditional guarantee was binding and enforceable against the guarantor even after the principal debtor obtained a release.)  The "broad language of this guarantee and its waiver of defenses" prevent Petróleo from asserting impossibility.  *Dresser-Rand Co. v. PDVSA Petroleo, S.A.*, No. 20-1990, 2021 WL 2878936, at *2 (2d Cir. July 9, 2021)("we comfortably conclude that Petróleo waived its impossibility defense."); see also *Red Tree*, 2021 WL 6092462, at *8  ("Petróleo has waived any defense to enforcement of the guaranty as against it.")

Accordingly, judgment should be entered against Petróleo regardless of any defenses PDVSA purports to assert.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for summary judgment in its entirety, along with such other relief as this Court deems proper.

Dated: April 25, 2025

COHEN TAUBER SPIEVACK & WAGNER P.C

By: /s/ Sari E. Kolatch
    Sari E. Kolatch
    420 Lexington Ave., Suite 2400
    New York, New York 10170
    Tel.: (212) 381-8729
    skolatch@ctswlaw.com

    *Attorneys for Weatherford Latin America,*
    *S.C.A. and Weatherford Switzerland Trading*
    *and Development GmbH*