```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
WEATHERFORD SWITZERLAND TRADING AND                                :
DEVELOPMENT GMBH, et al.,                                          :
                                                                   :
                              Plaintiffs,                          :     23-cv-10703 (LJL)
                                                                   :
              -v-                                                  :     MEMORANDUM AND
                                                                   :           ORDER
PETROLEOS DE VENEZUELA, S.A., et al.,                              :
                                                                   :
                              Defendants.                          :
                                                                   X
-------------------------------------------------------------------
```

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Weatherford Switzerland Trading and Development GmbH ("Weatherford GmbH") and Weatherford Latin America, S.C.A. ("Weatherford Latin America" and with Weatherford GmbH, "Plaintiffs") move for entry of judgment against Defendants Petroleos de Venezuela, S.A. ("PDVSA") and PDVSA Petroleo, S.A. ("Petroleo" and with PDVSA, "Defendants") in the amount of $167,396,358.26 owed as of September 11, 2025, with post-judgment interest at the 8.5% default interest rate. Dkt. Nos. 54–56, 59, 65. Defendants agree that judgment should be entered and agree on post-judgment interest to follow, but calculate the amount owed on September 11, 2025, as $149,546,976.40. Dkt. Nos. 58, 65. For the reasons that follow, Defendants' calculations are correct.

**I.    Background**

The facts and certain of the calculations are not in dispute. PDVSA, as Issuer, and Petroleo, as Guarantor, are parties to a Note Agreement dated June 28, 2016, with Weatherford Latin America, as Initial Noteholder, and Weatherford GmbH, as Administrative Agent. Dkt. No. 49-1 (the "Note Agreement"). Pursuant to the Note Agreement, PDVSA issued a Note to Weatherford Latin America in the principal amount of $120,000,009. Dkt. No. 49-2 (the

"Note"). The Note provides for an annual interest rate of 6.5% and a default interest rate of 8.5%. *Id.*; Dkt. No. 49-1 §§ 2.03, 2.04. PDVSA agreed to repay the principal amount in quarterly sums of $15,000,001.13 beginning on September 28, 2017, and continuing through June 28, 2019. Dkt. No. 49-2. Petroleo agreed to be jointly and severally liable for and to unconditionally guarantee the prompt payment when due of PDVSA's obligations under the Note. Dkt. No. 49-1 § 6.01.

Under the Note Agreement, an "Event of Default" occurs if PDVSA fails to pay the principal or interest due on the note on any of the repayment dates, and that failure continues for ten days after PDVSA is given notice of the failure. The occurrence of an "Event of Default" permits Plaintiffs to accelerate the Note. Dkt. No. 49-1 VII(a). The acceleration clause in the Note explains: "If an Event of Default, as defined in the Note Agreement, occurs and is continuing, the principal of this Note, together with all accrued and unpaid interest hereon, may be declared or otherwise become due and payable in the manner, and with the effect provided in the Note Agreement." Dkt. No. 49-2.[1]

Section 2.03 of the Note Agreement provides:

**Section 2.03  Interest on Notes.** (a) Subject to the provisions of Section 2.04, the Notes shall bear interest on the unpaid principal balance thereof from and after the Effective Date but excluding the date of repayment thereof, based on and computed on the basis of actual number of days elapsed on a year of 365 days, at a rate per annum equal to six and one-half percent (6.50%).

(b) Interest on the Notes shall be payable on the Repayment Dates (including the Maturity Date), or at maturity by acceleration, and, after such maturity, on demand.

---

[1] *See also* Dkt. No. 49-1 Art. VII (noting that upon an Event of Default, the Required Noteholders (here, Weatherford Latin America), or the Administrative Agent (here, Weatherford GmbH) "at the request of the Required Noteholders," may "declare the Notes then outstanding to be forthwith due and payable in whole or in part, whereupon the principal of the Notes so declared to be due and payable, together with accrued interest thereon and any unpaid accrued fees and all other liabilities of the Issuer accrued hereunder and under any other Finance Document, shall become forthwith due and payable").

2

Dkt. No. 49-1 § 2.03.  Section 2.04 of the Note provides in pertinent part:

> **Section 2.04 <u>Default Interest</u>.**  If (a) the Issuer shall default in the payment of any principal of or interest on any Note or any other amount due hereunder or under any other Finance Document, by acceleration or otherwise (including automatic acceleration), or (b) if any Event of Default under <u>Article VII</u> (other than paragraph (a), (b) or (f) of <u>Article VII</u>) has occurred and is continuing and the Required Noteholders accelerate the Notes or direct the Administrative Agent to accelerate the Notes, then, in the case of clause (a) above, until such defaulted amount shall have been paid in full or, in the case of clause (b) above, from the date the applicable action has been taken by the Required Noteholders and for so long as such Event of Default is continuing or until the date the Required Noteholders agree otherwise, to the extent permitted by law, all amounts outstanding under this Agreement and the other Finance Documents shall bear interest (after as well as before judgment), payable on demand, based on and computed on the basis of actual number of days elapsed on a year of 365 days, at a rate per annum equal to eight and one-half percent (8.50%).

Dkt. No. 49-1 § 2.04.

Article VII specifies the Events of Default.  Paragraph (a) defines as an Event of Default "the failure to pay the principal of, or interest on any of the Notes, when such principal becomes due and payable, including at any of the Repayment Dates, by acceleration or otherwise, and such failure continues for a period of ten (10) days after written notice thereof has been given to the Issuer."  Dkt. No. 49-1 Art. VII(a).  Paragraph (b) defines as an Event of Default "the failure by any Finance Party to pay any fee or any other amount under any Finance Document (other than the principal of, or interest on any of the Notes) when the same becomes due and payable" and the default continues for thirty days after notice.  *Id.* Art. VII(b).  Paragraphs (c), (d), and (e), by contrast, respectively define as Events of Default (1) a default in the observance or performance of any other covenant or agreement contained in the Finance Documents, (2) the failure to pay at final stated maturity the principal amount of any indebtedness of the Issuer or the Guarantor, and (3) the rendering of one or more judgments against the Issuer or the Guarantor in an aggregate amount in excess of a specified threshold.  *Id.* Art. VII (c), (d), and (e).

PDVSA failed to make a quarterly payment of $15,000,001.13 in principal and $1,442,465.86 in interest when it was due on March 28, 2018.  Dkt. No. 49-2; Dkt. No. 48 ¶ 26.  Accordingly, on April 3, 2018, Weatherford GmbH sent PDVSA a notice of default, notifying PDVSA that it had failed to make timely payment as required by the Note Agreement.  Dkt. No. 48 ¶ 26; Dkt. No. 49-14.  The Notice of Default declared that PDVSA's "failure to timely pay USD $16,442,466.99, representing $15,000,001.13 of principal and $1,442,465.86 of interest, in connection with the Note Agreement constitute[s] an Event of Default."  Dkt. No. 49-14.  PDVSA failed to pay within the applicable ten-day cure period specified in the Note Agreement and so, on April 13, 2018 (the "Default Date"), the failure to make the March payment became an Event of Default.  Dkt. No. 49-1 Art. VII(a).  On April 16, 2018 (the "Acceleration Date"), Weatherford GmbH sent a "Notice of Acceleration" to PDVSA declaring the entire unpaid principal amount of the Notes to be immediately due and payable, together with all accrued interest, including default interest running from the Default Date.  Dkt. No. 48 ¶ 28, Dkt. No. 49-15.  Since March 2018, neither PDVSA nor Petroleo has made any payments on the Note.  Dkt. No. 48 ¶¶ 24, 29, 33, 35.

The parties agree on many of the relevant calculations.  They agree that as of the Acceleration Date, Defendants owed $91,750,466.68 of combined principal and accrued interest up to that date (the "Accelerated Amount").[2]  They agree that the Accelerated Amount consists of $90,000,006.75 in outstanding principal and $1,750,459.94 in accrued interest, of which $1,738,972.73 is outstanding standard interest accrued on the principal prior to the Acceleration

---

[2] Plaintiffs' calculation in fact yields an amount owing of $91,749,458.94 (roughly $1,000 less than Defendants' calculation), for reasons that both sides agree are insignificant.  Accordingly, the Court treats Defendants' calculation of $91,750,466.68 owed on the Acceleration Date as a consensus position.

4

Date and the remainder is default interest on the missed principal payments for the three days between the Default Date and the Acceleration Date. They likewise agree that default interest of 8.5% per annum is accruing on the Accelerated Amount from the Acceleration Date to the Judgment Date, such that the per diem interest owed is $21,366.55.[3]

## II.     Discussion

The parties' calculations of the amount due at final judgment diverges as to the payment of default *interest on interest* accruing after the Acceleration Date.

Plaintiffs argue that the above contractual language requires that default interest of 8.5% be paid not just on the Accelerated Amount, which is, by definition, fixed on the Acceleration Date, but also on the per diem interest that continues to accrue on the outstanding principal from the Acceleration Date to the Judgment Date. In other words, they argue that Defendants owe default interest on the default interest that accrues on the principal post-Acceleration for each day until the defaulted amount is paid in full. They rely on the language of Section 2.04 that applies default interest to "all amounts outstanding under this Agreement," "for so long as such Event of Default is continuing," Dkt. No. 49-1 § 2.04, to argue that "all amounts outstanding" is not an amount fixed at the moment of Acceleration but rather an amount that changes each day as the pro rata portion of the default interest on the principal accrues. *See* August 27, 2025 Hearing Transcript ("Tr.") at 15:4–16:11. They arrive at that result by construing each day that the interest on the principal is not repaid as its own default, such that default interest is then owed on

---

[3] Defendants' calculations apply the 8.5% rate to the Accelerated Amount without differentiating between the portion of the Accelerated Amount that was principal or accrued interest prior to Acceleration. Plaintiffs' calculations instead apply 8.5% to the outstanding principal, and then separately calculate 8.5% running on the accrued interest, then the purported interest on interest, and then add the totals. The results are not different with respect to the undisputed $21,366.55 accruing per day in default interest on the Accelerated Amount.

5

that day's accrued default interest, calculated from that day until the Judgment Date. Tr. 11:11–18.[4]

Defendants argue that they are not required to pay default interest on the default interest that accrues after Acceleration Date. Rather, they argue, "all amounts outstanding" is fixed upon the Acceleration Date, and default interest of 8.5% accrues until the Judgment Date.

As an initial matter, Plaintiffs' reliance on the language "for so long as such Event of Default is continuing" from Section 2.04 is misplaced. That language applies only to Events of Default arising under clause (b) of 2.04, not under clause (a). On the facts presented, it is clear that clause (a) of Section 2.04 is the relevant clause. Clause (a) applies when the Issuer is in "default in the payment of any principal of or interest on any Note or any other amounts due [under the Note] or any other Finance Document,[5] by acceleration or otherwise." Dkt. No. 49-1 § 2.04. That clause generally corresponds to Art. VII(a) and (b) of the Note Agreement, which define as Events of Default the failure to pay the principal of or interest on any Notes or any other Finance Document. Dkt. No. 49-1 Art. VII(a), (b). Clause (b) of Section 2.04, by contrast, covers Events of Default other than the failure to pay principal or interest under the Note Agreement, the Notes, or any Finance Document, *e.g.*, the breach of other covenants.

Defendants identify two triggers for the payment of default interest: (1) the Default Date of April 13, 2018, the date as of which there was an Event of Default from the failure to pay principal and interest on the Note when such principal and interest became due on March 28,

---

[4] Tr. 11:11–18 ("[Plaintiffs]: My argument is the interest on the note continued to accrue and be due post-acceleration, so that you don't say everything that's due as of acceleration is only the amount that accrues default interest after acceleration as default interest on the amounts outstanding. You take the interest that continues to accrue and be due post-acceleration, and then you add interest to that because the contract provides for interest on interest.").

[5] "Finance Document" is defined by the Note Agreement as the Note Agreement, the Notes, and "any other document executed in connection with the foregoing." Dkt. No. 49-1 § 1.01.

6

2018; and (2) the Acceleration Date of April 16, 2018, when Weatherford GmbH accelerated the Notes and PDVSA failed to repay the principal of the Notes and the accrued interest thereon when such sums were due. Each of those events falls within clause (a) of Section 2.04. Neither fall within clause (b) of Section 2.04. Indeed, if more were needed, Weatherford GmbH's notice of default references specifically the failure to timely pay principal and interest when due as the Event of Default. Dkt. No. 49-14. And the Acceleration Notice, dated April 16, 2018, refers back to the notice of default. Dkt. No. 49-15. It does not reference any other Event of Default and specifically any Event of Default under VII (c), (d), or (e).

Accordingly, Plaintiffs' interpretation of "for so long as such Event of Default is continuing" as meaning that each day following Acceleration is its own consecutive default is incorrect. Rather, the applicable language of 2.04 from clause (a) mandates that, following Acceleration, "until such defaulted amount shall have been paid in full," "all amounts outstanding under this Agreement . . . shall bear interest (after as well as before judgment), payable on demand, based on and computed on the basis of actual number of days elapsed on a year of 365 days, at a rate per annum equal to eight and one-half percent (8.50%)." However, the language of 2.04 does not, alone, answer the question of what constitutes "all amounts outstanding under this Agreement" subject to the default interest rate.

"When a claim is predicated on a breach of contract, the applicable rate of prejudgment interest varies depending on the nature and terms of the contract." *NML Capital v. Republic of Argentina*, 952 N.E.2d 482, 488 (N.Y. 2011). "[W]hen the principal on a loan is due on a date certain and the debtor fails to make payment, the interest rate in the contract will be used to calculate interest on unpaid principal from the date of maturity of the loan to the entry of judgment." *Id.* at 489. In other words, as to principal, if a bond states that interest will be paid at

a specified rate until the principal is paid, then "interest on principal [is] assessed at the contract rate until the principal [is] repaid . . . or the contract merge[s] in the judgment." *Id.* The default rule under New York law is that, except where there is an express agreement to the contrary, a debtor does not owe compound interest or interest on interest. *See Rourke v. Fred H. Thomas Assocs.*, 627 N.Y.S.2d 831, 832 (3d Dep't. 1995).

Here it is useful to clarify the term "interest on interest." "Interest on interest" may be used interchangeably with compound interest, or "interest that is 'paid on both the principal and the previously accumulated interest.'" *Spodek v. Park Prop. Dev. Assocs.*, 759 N.E.2d 760, 761 (N.Y. 2001) (quoting Black's Law Dictionary (7th ed. 1999)). "This contrasts with simple interest, which is paid on the principal only and not on accumulated interest. The difference between these two formulations is that simple interest does not merge with principal and thus does not become part of the base for the computation of future interest." *Id.* (citation omitted). The calculation of compound interest necessarily requires identifying the dates or intervals of compounding—the point or points in time when the interest is compounded with the principal. In this case, both sides agree that Acceleration was a compounding event. "Interest on interest" is indisputably owed on the interest (both standard interest and three-days' worth of default interest) that accrued prior to the Acceleration Date. Likewise, neither side disputes that the entry of judgment will constitute a compounding event. Upon judgment, the accrued pre-judgment interest will be compounded with the Accelerated Amount, and post-judgment interest will run from that date forward on the combined total. So much follows from the language of Section 2.04 that default interest is payable "after as well as before judgment." *See Red Tree Investments, LLC v. Petroleos de Venezuela, S.A.*, 82 F.4th 161, 176–77 (2d Cir. 2023); Tr. 29:3–

8

12. If default interest were not payable on the amount of the judgment the language of Section 2.04 referring to payable "after" judgment would be illusory.

What is at issue here is whether default interest payments became due and owing between the Acceleration Date and the Judgment Date, such that default interest would be owed on each "missed" interest payment after the Acceleration Date. As noted above, the default rule in New York is that interest on interest is not owed. Parties may specify otherwise with clear contractual language. If a contract so provides, a creditor is entitled "to recover prejudgment interest on unpaid interest and principal payments awarded from the date each payment bec[omes] due under the terms of [a] note to the date liability is established." *Spodek,* 759 N.E.2d at 581 . "The imposition of . . . interest on the unpaid interest payments compensates the bondholders for a different loss [than that suffered from the failure to pay principal]—the failure of the issuer to timely make the interest-only payments." *NML Capital*, 952 N.E.2d at 494. "There is thus nothing unfair about requiring the defendant to pay over this 'profit' in the form of interest to the plaintiff, the party who was entitled to the funds from the date the defendant's liability was fixed." *Spodek*, 759 N.E.2d at 581–82 (citation omitted). However, interest on interest only accrues "where a contract provides for periodic payments or installments" for interest payments (or combined principal and interest payments), *NML Capital*, 952 N.E.2d at 488 (citing *Spodek*, 759 N.E.2d at 578–79), such that interest has become due and owing on dates certain. In other words, an interest payment is "missed" only when it is due and payable. Thus, such interest on interest is owed where that schedule of periodic interest payments has not been eliminated by some intervening contractual event. Acceleration is the paradigmatic contractual event that wipes out future interest payment dates on a loan agreement.

"'[A]cceleration' of a repayment obligation in a note or bond changes the date of maturity from some point in the future . . . to an earlier date based on the debtor's default under the contract." *NML Capital*, 952 N.E.2d at 491. "The normal consequence of acceleration is that interest payments that would have been due in the future are no longer due, because, after acceleration, the entire principal is immediately due and owing; in other words, future interest payments are 'unearned' because the creditor is no longer loaning the debtor the principal." *Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 296 (2d Cir. 2009). However, "the consequences of acceleration of the debt depend on the language chosen by the parties in the pertinent loan agreement." *NML Capital*, 952 N.E.2d at 492. The New York Court of Appeals has made clear that interest on interest was due under a note agreement that specified biannual interest payments running until the principal was paid in full, with no "language in the repayment or acceleration clauses—or any other provision of the bond documents—indicating that the parties intended this requirement to terminate upon acceleration of the debt." *Id.* Accordingly, where a contract sets forth a schedule of future interest payments that, by its own terms, *survives* acceleration, and requires that such payments be made until the principal is repaid, interest may be owed on those scheduled interest payments. *See NML Cap. v. Republic of Argentina*, 621 F.3d 230, 243 (2d Cir.) ("[B]ecause the [note's] specification of dates certain for the payment of bi-annual interest, together with the requirement that such payments be made 'until the principal hereof is paid,' may distinguish the instant case from *Capital Ventures*, we think it prudent to certify [the] question to the New York Court of Appeals."), *certified question accepted*, 936 N.E.2d 455 (N.Y. 2010), *and certified question answered*, 952 N.E.2d 482 (N.Y. 2011). However, where the contract specifies that upon acceleration, no future scheduled interest

10

payments are due, the default rule holds and interest on the interest accruing after the acceleration date does not accrue.

In this case, the Note set forth a repayment schedule for interest and principal on a quarterly basis, with specified dates. Dkt. No. 49-2. However, Section 2.03(b) of the Note Agreement clarifies that "[i]nterest on the Notes shall be payable on the Repayment Dates (including the Maturity Date), or at maturity by acceleration, and, after such maturity, on demand." Dkt. No. 49-1 § 2.03; Tr. 29:3–6 ("[Defendants]: Section 2.03(b) says, interest shall be payable in three situations: On the repayment dates, maturity by acceleration, or on demand. We have the maturity by acceleration here. That's when amounts were due."); *id.* at 32:5–9 ("[Defendants]: [T]his contract doesn't have an 'interest is due every day' or interest is due every month or every six months, like cases do, and this note agreement only specifies that interest is due on the schedule, which is now moot because of acceleration."). The Court agrees with Defendants that under the terms of the Note Agreement, acceleration had the "normal consequence" of rendering "interest payments that would have been due in the future . . . no longer due." *Cap. Ventures*, 552 F.3d at 296. Because no future interest payments were "due" after acceleration, no interest was "earned" on the default interest accruing on the principal between the Acceleration Date and the Judgment Date. Nothing in the Note or Note Agreement suggests otherwise.

Put another way, Plaintiffs are entitled to interest at the contract default rate of 8.5% but only on the Acceleration Amount, e.g., the combined principal and the interest that became due and owing on the date of acceleration. The 8.5% interest that accrued on each succeeding day after the date of acceleration was not due and owing on each day and, accordingly, an additional 8.5% interest on interest was not due on those additional sums. Plaintiffs' arguments to the

11

contrary cannot be reconciled with *Capital Ventures* and *NML*, nor do their proposed calculations cohere with their legal theories.

First, Plaintiffs do not argue for interest on interest accruing on the quarterly payment schedule set forth in the Note—they do not dispute that acceleration under this Note and Note Agreement has the "normal consequence" of obviating that quarterly schedule. *See* Tr. at 7:16–7:18 ("[Plaintiffs]: [O]n the acceleration date, when it's accelerated, then it's due, and the interest on it had been accelerated as well and is due."). Rather, they make a tortured argument stemming from clause (b) of Section 2.04 that interest payments come due every day following default, running indefinitely until payment is made in full, such that interest should run on each day's accrued interest until that interest is merged in judgment. This approach is not supported under either *Spodek* or *NML*, nor is Plaintiffs' interpretation of Section 2.04 supportable, as explained above.

Second, Plaintiff's argument that each day's accrued interest should be counted into the "amount outstanding" for the application of default interest would naturally be an argument for compound interest. That is, under Plaintiffs' logic, the per diem interest accrued from the prior day should be added to the principal for the purposes of calculating the following day's accrued interest, and so forth. That is not, however, how Plaintiffs calculate interest on interest, nor what they argue for. Instead, Plaintiffs calculate the per diem share of 8.5% on an annual basis and then calculate simple interest on that day's per diem share running from that day until the day of judgment. They then add up the total of each successive day's interest on interest to reach their total of more than $17.8 million in accrued simple default interest on simple default interest. Plaintiffs offer no explanation for why their logic would not support compound interest, compounded daily. *See* Tr. 17:4–18:5; 30:12–17; 49:11–17.

12

Finally, Plaintiffs' argument to the contrary notwithstanding, this result is not inconsistent with the Second Circuit's decision in *Red Tree*, 82 F.4th 161. The question there was whether, after PDVSA had defaulted on its obligations under an identically worded Note and Note Agreement, "the outstanding principal and interest that accrued pre-judgment—including both default and ordinary interest—[we]re subject to default interest post-judgment." *Id.* at 177. Construing the same contractual language at issue here, the Second Circuit concluded that Plaintiff, as successor-in-interest to PDVSA's creditor, was entitled to default interest running from the date of judgment on both the principal and the accrued default interest to date, *i.e.*, up to the date of judgment. The court concluded that "the contracts provide[d] that the default interest rate applie[d] to overdue payments of interest, without limitation," and that accordingly, they "authorize[d] default interest on default interest." *Id.* at 176–77. The same result follows here. As set forth above, entry of judgment is a compounding event. Plaintiffs are entitled to default interest on the principal and accrued interest as of the Acceleration Date. From the Judgment Date forward, Plaintiffs are also entitled to default interest on the full amount of the judgment including the default interest accrued from the Acceleration Date to the Judgment Date, as well as the outstanding principal and ordinary interest accrued pre-acceleration. What is telling about *Red Tree* is what plaintiffs there did not demand and what the Circuit did not award. Plaintiffs in *Red Tree* demanded only simple default interest on the compounded total judgment (including both principal and interest)—they did not demand or receive daily accruing interest on interest from acceleration to judgment, nor did they demand or receive interest on interest each day following the entry of judgment. Rather, the Circuit awarded 8.5% on the judgment amount running forward until the payment date, calculated as simple interest. Plaintiffs here are entitled to no more.

13

The Court accordingly adopts Defendants' calculations in whole, entering judgment in the Plaintiffs' favor in the amount of $149,546,976.40 by separate order of judgment.

The Clerk of Court is respectfully directed to close Dkt. No. 44.

SO ORDERED.

Dated: September 11, 2025
New York, New York

                                          LEWIS J. LIMAN
                                       United States District Judge